1  CLAUDIA QUINTANA,
   City Attorney, SBN 178613
2  BY:  KELLY J. TRUJILLO,
   Deputy City Attorney, SBN 244286
3  CITY OF VALLEJO, City Hall
   555 Santa Clara Street, P.O. Box 3068
4  Vallejo, CA 94590
   Tel:  (707) 648-4545
5  Fax:  (707) 648-4687

6  MARK A. JONES, SBN 96494
   KRISTEN K. PRESTON, SBN 125455
7  JONES & DYER
   A Professional Corporation
8  1800 J Street
   Sacramento, CA 95811
9  Tel:  (916) 552-5959
   Fax:  (916) 442-5959
10
   Attorneys for Defendants CITY OF VALLEJO, a municipal corporation;
11 SEAN KENNEY; WAYLON BOYCE, MARK THOMPSON
   individually and in their official capacities as Police Officers for the CITY OF VALLEJO
12
                       UNITED STATES DISTRICT COURT
13
                          EASTERN DISTRICT
14

15 THE ESTATE OF ANTON BARRETT, by       Case No.: 2:13-CV-00846-JAM-CKD
   and through its representatives ANTON
16 FRANK    BARRETT,    PASHANEY          **NOTICE OF MOTION AND MOTION,
   BARRETT AND A.P.B., a minor, by and   STATEMENT OF RELIEF
17 through his guardian ad litem TASHA    REQUESTED AND MEMORANDUM
   PERRY; ANTON FRANK BARRETT,           OF POINTS AND AUTHORITIES IN
18 individually,  PASHANEY  BARRETT,      SUPPORT OF DEFENDANTS'
   individually and A.P.B., a minor, by and MOTION FOR SUMMARY
19 through his guardian ad litem, TASHA   JUDGMENT OR PARTIAL
   PERRY,                                SUMMARY JUDGMENT OF
20                                        PLAINTIFFS' CLAIMS
                                         [FRCP 56; LR 260]**
21        Plaintiffs,

22 vs.                                    **Date: April 22, 2015
                                         Time: 9:30 a.m.
23 CITY   OF   VALLEJO,   a  municipal    Courtroom 6, 14th Floor**
   corporation; SEAN KENNEY; WAYLON
24 BOYCE,  MARK  THOMPSON;  AND          **Hon. John A. Mendez**
   DOES 1-50, inclusive; individually and in
25 their official capacities as Police Officers **Trial Date: July 20, 2015
   for the CITY OF VALLEJO,              Pre-Trial Conference: June 5, 2015**
26
                       Defendants.
27

28

          **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

## TABLE OF CONTENTS

**PAGE**

NOTICE OF MOTION ............................................................................................................. 1

STATEMENT OF RELIEF REQUESTED ............................................................................ 1

ISSUES TO BE DECIDED .................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES......................................................... 2

I.    INTRODUCTION......................................................................................................... 2

II.   STATEMENT OF UNDISPUTED FACTS................................................................. 3

III.  PLAINTIFFS' COMPLAINT...................................................................................... 7

IV.   LAW AND ARGUMENT ............................................................................................ 9

   A.   Standard For Summary Judgment.......................................................................... 9

   B.   Plaintiffs Cannot Establish Essential Elements of Their Claim for Violation of  Barrett
        Sr.'s Fourth Amendment Rights............................................................................... 9

   C.   Plaintiffs Cannot Establish Essential Elements of Their Claims for Violation of  Their
        Fourteenth Amendment Rights To Familial Relationship With Barrett Sr....................... 14

   D.   Defendant Kenney Is Entitled To Qualified Immunity. .......................................... 15

   E.   Plaintiffs Cannot Maintain A Claim for "Wrongful Death – 42 U.S.C. § 1983."............... 16

   F.   Plaintiffs Have No Evidence That the City Had a Policy or Practice to Violate Civil
        Rights............................................................................................................................ 16

   G.   Plaintiffs Cannot Establish Essential Elements of Their Claim for Wrongful Death. ...... 20

   H.   Plaintiffs Cannot Establish Essential Elements of Their Claim for Violation of Ca. Civil
        Code § 52.1......................................................................................................................... 21

   I.   Plaintiffs Cannot Establish an Essential Element of the Eighth Cause of Action for
        Violation of Ca. Civil Code § 51.7.................................................................................. 22

   J.   Plaintiffs Cannot Establish Essential Elements of Their Claim for Intentional Infliction of
        Emotional Distress. ...................................................................................................... 23

i

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION

K.      **Plaintiffs Cannot Establish Essential Elements Of Their Claim Assault and Battery.** ...... 23

L.      **Plaintiff Barrett Jr. Cannot Establish Essential Elements of His Claim For Negligent Infliction of Emotional Distress.** ....................................................................... 24

M.     **Plaintiffs Cannot Maintain A Cause of Action Against "Doe" Defendants.** ..................... 255

IV.    **CONCLUSION** ........................................................................................................ 25

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Alderman v. United States*
  394 U.S. 165 (1969)................................................................ 16

*Anderson v. Creighton,*
  483 U.S. 635, 640 (1987)......................................................... 15

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242, 255 (1986)........................................................... 9

*Austin B. v. Escondido School District,*
  149 Cal.App.4th 860 (2007) ..................................................... 22

*Bartolome v. City and County of Honolulu,*
  2008 WL 2736016 (D. Hawaii 2008) ...................................... 17

*Berman v. Sink,*
  WL 2360899 (E.D. Cal. 2013) ................................................. 21

*Bird v. Saenz,*
  28 Cal.4th at 910 (2002) .......................................................... 24

*Board of Cnty Commrs v. Brown*
  520 U.S. 397 (1997)................................................................. 20

*Brown v. Ransweiler,*
  171 Cal.App.4th 516 (2009) ............................................... 23, 24

*Bryan v. McPhearson,*
  630 F.3d 805 (9th Cir. 2010) ................................................... 10

*Bryant v. Whalen,*
  759 F.Supp. 410, 423-424 (N.D. Ill. 1991)............................. 18

*Canton v. Harris,*
  489 U.S. 378, 389-391 (1989) ............................................ 16, 19

*Celotex Corp. v. Catrett*
  477 U.S. 317, 323 (1986)........................................................... 9

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

*Christie v. Iopa*,
    176 F.3d 1231 (9th Cir. 1999) ............................................................. 18

*City of Oklahoma v. Tuttle*,
    471 U.S. 808 (1995) ............................................................................. 18

*Connick v. Thompson*,
    131 S.Ct. 1350 (2011) .......................................................................... 20

*Cruz v. City of Anaheim*,
    765 F.3d 1076 (9th Cir. 2014) ............................................................. 14

*Cunningham v. Gates*,
    229 F.3d 1271 (9th Cir. 2000) ............................................................. 23

*Decoura v. Ford*,
    WL 2577554 (E.D. Cal. 2012) ............................................................. 25

*Devereaux v. Abby*
    263 F.3d 1070 (9th Cir. 2001) ............................................................... 9

*Doe v. City of San Diego*,
    35 F.Supp.3d 1233 (S.D. Cal. 2014) .................................................. 17

*Edson v. City of Anaheim*,
    63 Cal.App.4th 1269 (1998) ................................................................. 24

*Fairbank v. Wunderman Cato Johnson*
    212 F.3d 528 (9th Cir. 2000) ................................................................. 9

*Foster v. City of Fresno*,
    392 F.Supp.2d 1140 (E.D. Cal. 2005) ................................................ 10

*George v. Morris*,
    736 F.3d 829 (9th Cir. 2013) ............................................................... 14

*Gillespie v. Civiletti*,
    629 F.2d 637 (9th Cir. 1980) ............................................................... 25

*Gillette v. Delmore*,
    979 F.2d 1342 (9th Cir. 1992) ....................................................... 17, 18

*Goldstein v. Superior Court*,
    223 Cal.App.3d 1415 (1990) ............................................................... 24

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

*Graham v. Connor*,
   490 U.S. 386 (1989)................................................................................................. 10

*Hernandez v. City of Pomona*,
   46 Cal.4th 501 (2009)........................................................................................ 20, 21

*Hocking v. City of Roseville* 2008
   WL 1808250 (E.D. Cal. 2008)........................................................................... 18, 19

*Kanae v. Hodson*,
    294 F.Supp.2d 1179 (D. Hawaii 2003) ................................................................. 17

*Knapps v. City of Oakland*,
   647 F.Supp.2d 1129 (N.D. Cal. 2009) ............................................................. 22, 23

*Larez v. City of Los Angeles*,
   946 F.2d 630 (9th Cir. 1991) ................................................................................. 17

*Long v. City and County of Honolulu*,
   511 F.3d 901 (9th Cir. 2007) ................................................................................. 15

*Lujan v. National Wildlife Federation*
   497 U.S. 871 (1990).................................................................................................. 9

*Mattos v. Agarno*,
   661 F.3d 433 (9th Cir. 2011) ........................................................................... 10, 15

*McCleskey v. Kemp*,
   481 U.S. 279 (1987)................................................................................................ 19

*Merritt v. County of Los Angeles*,
   875 F.2d 765 (9th Cir. 1989) ................................................................................. 20

*Messerschmidt v. Millender*,
   -- US --, 132 S.Ct. 1235, 1244 (2012) ................................................................. 15

*Monell v. New York City Dept. of Social Services*,
   436 U.S. 658 (1978)..................................................................................... 16, 18, 20

*Muhammad v. Garrett*,
   WL7004752 (E.D. Cal. 2014)................................................................................. 22

*Munoz v. City of Union City*,
   120 Cal.App.4th 1077 (2004) ................................................................................ 23

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

*Oviatt v. Pearce,*

   954 F.2d 1470 (9th Cir. 1992) ..................................................................... 18

*People v. Hardwick,*

   204 Cal. 582 (1928) ................................................................................... 21

*People v. Williams,*

   130 Cal.App.4th 1440 (2005) ..................................................................... 11

*Plumhoff v. Rickard,*

   134 S.Ct. 2012 (2014) .......................................................................... 10, 15

*Porter v. Osborn,*

   546 F.3d 1131 (9th Cir. 2008) ............................................................... 14, 15

*Sanchez v. City of Fresno,*

   914 F.Supp.2d 1079 (E.D. Cal. 2012) ......................................................... 22

*Scott v. Henrich,*

   39 F.3d 912 (9th Cir. 1994) .................................................................. 10, 19

*Smith v. City of Hemet,*

   394 F.3d 689 (9th Cir. 2005) ....................................................................... 10

*Strauss v. City of Chicago,*

   760 F.2d 767 (3rd Cir. 1985) ............................................................... 18, 19

*Sykes v. U.S.,*

   131 U.S. 2267 (2011) ................................................................................. 11

*Tennessee v. Garner,*

   471 U.S. 1 (1985) ............................................................................... 10, 15

*Thing v. La Chusa,*

   48 Cal.3d 644 (1989) ................................................................................. 24

*Tolosko–Parker v. County of Sonoma,*

   2009 WL 498099 (N.D. Cal. 2009) ............................................................ 21

*Trevino v. Gates,*

   99 F.3d. 911 (9th Cir. 1996) ............................................................... 17, 19

*United States v. Ross,*

   92 U.S. 281 (1875) ..................................................................................... 22

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

*Venegas v. County of Los Angeles*,

    32 Cal.4th 820 (2004) ................................................................................. 21

*Whren v. U.S.*,

    517 U.S. 806 (1996) ................................................................................... 21

**Statutes**

42 U.S.C. §1983 ........................................................................................... passim

Ca. Civil Code §51.7 ................................................................................... 22, 23

Ca. Civil Code §52.1 ..................................................................................... 2, 21

**Other Authorities**

Ca. Penal Code section 196 ................................................................................ 23

Ca. Veh. Code §§ 2800.2, 21453, 21658, 22353, 22450A, 24250, 40000.1 ......... 11

Fed. Rules of Civ. Pro. 56 .................................................................................. 1, 9

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

## NOTICE OF MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on April 22, 2015 at 9:30 a.m. or as soon thereafter as counsel may be heard, before the Hon. John A. Mendez, in Courtroom 6, 14th Floor, 501 I Street, Sacramento, California, Defendants City of Vallejo and Sean Kenney ["Defendants"] will move this Court for an order granting summary judgment, or partial summary judgment pursuant to Fed. R. Civ.P. 56 as against Plaintiffs ESTATE OF ANTON BARRETT by and through its personal representatives and ANTON FRANK BARRETT, PASHANEY BARRETT and APB BARRETT by and through his guardian TASHA PERRY ["Plaintiffs"] who allege claims against these Defendants.  This motion is based on this notice, the declarations of Kristen K. Preston, Jared Jaksch, Jared Zwickey and Alexander Jason and exhibits thereto, the memorandum of points and authorities and separate statement in support thereof, the pleadings on file in this action, and on such oral argument as the court may permit.

## STATEMENT OF RELIEF REQUESTED

Defendants request an order granting summary judgment or partial summary judgment in their favor against the claims of Plaintiffs including the first through eleventh causes of action set forth in plaintiffs' First Amended Complaint.

## ISSUES TO BE DECIDED

Whether, as demonstrated by Plaintiffs' pleadings, sworn testimony and uncontested facts, liability against Defendants, and each of them, is precluded as a matter of law on the basis that:

1.　　Plaintiffs cannot establish the essential elements of their claim against Officer Kenney pursuant to 42 U.S.C. §1983 for deprivation of the Fourth Amendment rights of Anton Barrett Sr. as alleged in their first and fourth causes of action;

2.　　Plaintiffs cannot as a matter of law maintain their second cause of action for "Wrongful Death – 42 U.S.C. § 1983."

3.　　Plaintiffs cannot establish the essential elements of their claim pursuant to 42 U.S.C. §1983 for deprivation of Fourteenth Amendment rights as alleged in their third cause of action;

4.　　 Officer Kenney is entitled to qualified immunity;

5.　　There exists insufficient evidence of municipal liability to satisfy the requirements of

1
**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

*Monell* as alleged in Plaintiffs' fifth cause of action;

6.      Plaintiffs cannot establish essential elements of their claim for wrongful death/negligence as alleged in their sixth cause of action;

7.      Plaintiffs cannot maintain the seventh cause of action for violation of Ca. Civil Code §52.1 as to Barrett Sr. in the absence of a constitutional violation;

8.      There exists insufficient evidence that the Defendants' alleged actions as to Barrett Sr. were racially motivated to satisfy the requirements of Ca. Civil Code §51.7 as alleged in Plaintiffs' eighth cause of action;

9.      Plaintiffs cannot establish essential elements of their claim for intentional infliction of emotional distress as to Barrett Sr. as alleged in their ninth cause of action;

10.     Plaintiffs cannot establish essential elements of their claims for assault and battery as to Barrett Sr. as alleged in their tenth cause of action;

11.     Plaintiff Anton Frank Barrett cannot establish essential elements of his claim for negligent infliction of emotional distress as alleged in his eleventh cause of action; and

12.     Plaintiffs cannot as a matter of law maintain any cause of action against "Doe" Defendants.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Plaintiffs allege civil rights violations against Defendants following an incident that occurred on May 28, 2012 resulting in the death of Anton Barrett Sr. ["Barrett Sr."].  Barrett Sr. and his son Anton Frank Barrett ["Barrett Jr."] led officers on a high speed vehicle pursuit through Vallejo city streets. After coming to a dead end, Barrett Sr. and Barrett Jr. continued to flee on foot. Barrett Jr. abandoned his father.  He jumped a fence and ran to a neighboring street where he hid in bushes.  Barrett Sr. ran from officers and refused to comply with repeated commands from the officers to stop.  Barrett Sr. then charged towards Officer Kenney, refused to comply with commands to stop and quickly put his right hand in his jacket pocket and began to pull out an object that appeared to be a weapon.  The undisputed evidence confirms that the officer reasonably believed that Barrett Sr. posed an immediate, serious threat and that the officer's response was objectively reasonable.  The officer's conduct is not actionable

1  on any theory.

2  **II.    STATEMENT OF UNDISPUTED FACTS**

3      Barrett Sr. died as the result of gunshot wounds he suffered in a police-involved shooting

4  incident on May 28, 2012.  UMF 1.   Immediately prior to the shooting incident, Barrett Sr. was

5  operating a white Lexus SC400 through the streets of Vallejo.   UMF 2.   Barrett Jr. was a front seat

6  passenger and an individual named "Gas" was a rear seat passenger in the vehicle operated by Barrett

7  Sr. UMF 3.   Vallejo Police Department Officers Jaksch and Tai were patrolling in a marked police

8  vehicle (Unit 155) designated as a DUI Enforcement Suppression Vehicle.   Around midnight the

9  officers observed the white Lexus SC400 in the area of Sonoma Boulevard and Tennessee Street. UMF

10  4.   The Lexus exited a parking lot northbound on Sonoma Boulevard.   The Lexus did not activate its

11  turn signal and was traveling at a high rate of speed, scraping the pavement as it exited.   UMF 5. There

12  was a traffic stop in progress on Sonoma, approximately 50 yards south of Tennessee Street.   The lights

13  from the patrol vehicle making that stop were flashing.   Officer Jaksch suspected that the Lexus was

14  potentially trying to get away from this police activity.   UMF 6.   Based on his years of experience

15  patrolling in the City of Vallejo Officer Jaksch is aware that the area of Tennessee and Sonoma is an

16  area where a high rate of crime occurs.   In light of his observations and experience, Officer Jaksch was

17  also suspicious that the Lexus may be involved in criminal activity. UMF 7.   The Lexus was "blacked

18  out," meaning it had no head lights or tail lights activated.   Officer Jaksch told Officer Tai that the

19  Lexus had no lights.   UMF 8. The Lexus accelerated away from them.   Officer Jaksch activated the

20  lights and siren on Unit 155. UMF 9.

21      Vallejo Police Officers Dustin Joseph and Sean Kenney were also patrolling in a marked patrol

22  car driven by Officer Joseph in the vicinity of Sonoma Boulevard and Tennessee Street when they heard

23  a radio dispatch from Officer Tai regarding the pursuit and observed Unit 155 pursuing the Lexus.

24  UMF 10.   Officers Kenney and Joseph joined the pursuit and were approximately two blocks behind

25  Unit 155.   UMF 11.   Barrett Sr. did not stop his vehicle in response to the marked police vehicles

26  pursuing him. UMF 12.

27      From the time Barrett Sr. began to lead the Vallejo Police Officers on a high speed pursuit up to

28  the shooting involving Barrett Sr. the officers were faced with rapidly evolving, chaotic and potentially

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

life-threatening circumstances. UMF 13. The Lexus was without lights and was traveling at a high rate of speed in excess of the posted limit, sending up a lot of dust, running a stop light and several stop signs, hitting a curb, blowing tires, and traveling at times on the wrong side of the street during the pursuit. UMF 14.

Officers Joseph and Kenney observed the vehicles involved in the pursuit turn northbound on Old Wilson Avenue.  UMF15. The rear parking lot of the apartment complex at the end of Wilson is the termination of a driveway that runs from Wilson around the apartment buildings.   This was known to the pursuing officers. UMF 16.  Officer Jaksch drove Unit 155 into the parking lot behind the Lexus, which stopped. Barrett Sr. and Barrett Jr. exited the Lexus and ran southbound across the parking lot. UMF 17.  The driver was wearing dark pants and a dark jacket or sweatshirt. UMF 18. Officers Jaksch and Tai exited their patrol vehicle.  Officer Jaksch made eye contact with Barrett Sr. and ordered him to stop.   Officer Tai also ordered Barrett Sr. to stop. UMF 19. Barrett Sr. did not comply with the commands of Officers Jaksch and Tai.  Barrett Sr. continued running, first south and then turned west where he entered a dark breezeway between two apartment buildings disappearing from the view of Officers Jaksch and Tai.  Officer Tai got out his Taser as he continued running after Barrett Sr. UMF 20. Barrett Jr. continued running south, ascended stairs, jumped over a gate, and disappeared from the officers' view. Barrett Jr. ultimately hid in bushes on Farragut Avenue. UMF 21.

Given the high speed vehicle pursuit, the Lexus operator's refusal to stop for clearly marked law enforcement vehicles with lights and sirens activated, and the continued attempt to flee, Officer Kenney suspected the occupants of the Lexus of criminal activity and was also concerned for the public's safety. UMF 22.  Officers Joseph and Kenney drove up to the front of the apartment complex where Officer Kenney got out of the patrol car.  UMF 23. As he exited the patrol car Officer Kenney heard a loud "pop" coming from the area where the pursuit terminated.  Officer Kenney did not know whether the sound was made by a gun shot, a tire blowout, a car door slamming or something else but believed that the sound represented some kind of threat to the officers on the other side of the building.  Kenney started running through the breezeway toward the back parking lot.  Given his experience and based on what he had seen and heard, including his knowledge that fleeing suspects are often armed, Officer Kenney pulled out his weapon. UMF 24.   Officer Joseph observed Officer Kenney run eastbound

4

1    toward the breezeway of the apartment building.  Officer Joseph pulled the patrol vehicle ahead a few

2    feet and then observed Barrett Sr. running westbound into the breezeway from the rear of the apartment

3    building.  Officer Joseph observed that Barrett Sr. had his hands in his waistband area as he ran.  He

4    saw Barrett Sr. running towards where Officer Kenney was dropped off.  Barrett Sr. and Officer Kenney

5    were essentially running towards each other.  Officer Joseph stopped and exited toward the rear of the

6    patrol vehicle. UMF 25.

7        Officer Kenney was running eastbound through the breezeway between the apartment buildings

8    towards the back parking lot when suddenly he observed Barrett Sr. was running westbound at him.

9    UMF 26.  Officer Kenney immediately stopped and retreated, backing up and moving to his right. UMF

10   27.  Officer Kenney ordered Barrett Sr. to "stop."  Barrett took a "chop" or "stutter" step, made a

11   swiping motion with his left arm and hand that appeared to Officer Kenney to be an attempt to touch

12   Kenney or Kenney's gun, and continued to move toward Officer Kenney.  Officer Kenney continued to

13   backpedal and commanding Barrett Sr. to "stop." UMF 28. Barrett then quickly reached his right hand

14   into his front sweatshirt pocket and began to pull out what appeared to Officer Kenney to be a gun.

15   UMF 29.  Barrett Sr.'s persistence in fleeing, refusal to obey commands, continuing at Officer Kenney,

16   swiping his hand at Officer Kenney, and reaching into and then start pulling his hand out of his right

17   front sweatshirt pocket, in addition to Officer Kenney's experience, led Officer Kenney to believe that

18   Barrett Sr. was going for a gun.  Officer Kenney fired to neutralize what he perceived to be an

19   immediate deadly threat posed by Barrett Sr.  UMF 30. As Officer Kenney fired, Kenney stepped to his

20   left.  Barrett Sr. continued on the same path and then turned towards the south away from Kenney. UMF

21   31.

22        Within seconds after Barrett Sr. disappeared from their view Officers Tai and Jaksch heard gun

23   shots.  Officer Joseph also heard the gun shots but could not see either Barrett Sr. or Kenney from his

24   position. Officers Tai and Joseph immediately ran toward the area from where the sounds came. UMF

25   32.  Officers Tai and Joseph approached the area where Officer Kenney and Barrett Sr. were and

26   Officer Kenney announced to these officers several times that Barrett Sr. had a gun.  UMF 33.  Both

27   Officers Tai and Joseph observed Barrett Sr. lying on the ground with his hands under his body as they

28   approached.  Both observed Barrett Sr. moving or attempt to get up. UMF 34.  Based on the

circumstances observed by and known to Officer Tai, including Barrett Sr.'s attempts to flee law enforcement officers and refusal to comply with officers' commands, gun shots being fired, Officer Kenney yelling that Barrett Sr. has a gun, and Barrett Sr.'s hands not being visible as he was rolling on to his side and raising up toward Officer Tai, Officer Tai believed it was necessary to and did discharge his Taser towards Barrett Sr. for a single five second cycle to bring Barrett Sr. back into compliance. Barrett Sr. fell back down.  UMF 35.  Barrett Sr. was handcuffed and searched and a black blocky object consisting of a metal wallet was located in the right front pocket of Barrett Sr.'s sweatshirt. UMF 36.

Tarrie Wagner and Tammy Neal were, as of May 28, 2012, residents of separate apartments within the complex on Wilson.  UMF 37. The women heard vehicles driving fast northbound on Wilson and heard screeching tires, vehicles revving, sirens and saw red and blue flashing lights. UMF 38. Neal could see blue and red strobe lights shining through her window blinds.  She heard someone running southbound.  She also heard someone yell "Stop, I said stop" and "Get your hands up."  She then heard gun fire consisting of 4 or 5 shots. UMF 39. Wagner also heard the words "Stop!" being yelled at least twice and heard the words "Raise your hands" and "put your hands in the air" also yelled.  Soon after hearing these words yelled she heard four or five gun shots. UMF 40.

The physical evidence is consistent with Officer Kenney's recitation of the incident, including the location of the fired cartridge casings, the retrieval of a metal wallet from Barrett Sr.'s person, and the nature and location of the gunshot wound to Barrett Sr.'s right forearm consistent with Barrett Sr.'s right hand being near his right front sweatshirt pocket when he was shot. UMF 41.  The physical evidence, autopsy report and officer's description are consistent with 5 gunshot wounds to Barrett Sr. and are consistent with a rapid rotation by Barrett Sr. while the shots were fired in the following sequence: (1) a bullet entering the abdomen in a front to back and downward angle while Barrett Sr. was facing Officer Kenney; (2) a bullet entering and exiting the forearm approximately 5" above the right wrist while the forearm was in a position consistent with the right hand in or being withdrawn from the pocket with the right arm bent at the elbow and beyond the lateral line of the torso; (3) a bullet entering the right side of the chest and exiting the top of the left shoulder, right to left and upward; and (4) and (5) bullets entering the left buttock back to front upward and leftward and entering the right

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

upper back, back to front and upward that cannot be individually sequenced. UMF 42.  The amount and the type of force used by Officer Kenney were consistent with his training. UMF 43.  The use of deadly force by Officer Kenney was consistent with the Vallejo Police Department's Use of Force policy and law enforcement practices. UMF 44.

The force used by Officer Tai in discharging his Taser was consistent with his training. UMF 45.  The use of force by Officer Tai was consistent with the Vallejo Police Department's Use of Force and Taser Deployment policies and law enforcement practices. UMF 46.  Neither Officer Boyce nor Officer Thompson personally participated in any alleged use of force against Barrett Sr.  UMF 47.  Officer Kenney was not near Barrett Jr. at the time he was taken into custody and did not hear a racial slur directed at Barrett Jr. UMF 48.  Officers Kenney, Tai, and Jaksch were fully uniformed at the time of the incident and were readily recognizable as law enforcement officers. UMF 49.

From his position, Barrett Jr. could not see the walkway where Barrett Sr. was located when the shooting occurred.  UMF 50.  Barrett Jr. heard two gun shots. Barrett Jr. did not visually observe the shooting.  UMF 51.  Following the incident biological samples including blood were taken from Barrett Sr. and his blood tested positive for ethyl alcohol in the level of 0.18 grams %.  UMF 52. Barrett Jr. was drunk on alcohol and high on marijuana at the time of the incident. UMF 53.

## III.   PLAINTIFFS' COMPLAINT

Plaintiffs Barrett Jr., Pashaney Barrett and minor APB allege that they are the biological children and successors in interest of Barrett Sr. who was an unmarried man at the time of the incident.   ECF No. 6, ¶¶ 3, 4.  On that basis, plaintiffs allege standing to pursue causes of action on their own behalf for wrongful death and 42 U.S.C. 1983 for interference with familial relationship protected by the Fourteenth Amendment.  *Id.*  These plaintiffs also assert survival claims on behalf of Barrett Sr. based on the alleged violation of Barrett Sr.'s Fourth Amendment rights, assault and battery, and intentional infliction of emotional distress.  Barrett Jr. alleges a *Dillon v. Legg* cause of action on his own behalf for negligent infliction of emotional distress.

Plaintiff Estate also alleges a violation by Officer Kenney of Ca. Civil Code § 51.7 claiming:

> This responding party is informed and believes and thereon alleges
> Defendant Kenney has used deadly force against two African Americans.
> Neither Plaintiff Barrett Sr. nor Plaintiff Barrett Jr. were (sic) armed and

7

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

both are readily identifiable as African Americans.   None of the Defendants are African Americans.

UMF 54.[1]

Plaintiffs assert a *Monell* claim against the City of Vallejo; however this claim lacks any evidentiary support.  Plaintiffs allege the existence of an "entrenched culture" and official custom, policy and practice of indifference that led to the incidents with Barrett Sr. and Barrett Jr. and that the City "approved, ratified, condoned, encouraged, sought to cover up, and/or tacitly authorized [a] continuing pattern or practice of misconduct and/or civil rights violations" as evidenced by:

> (1)  Failure to discipline its officers involved in the Barrett and other incidents allegedly involving "improper detentions and arrests, the use of racial profiling, the use of excessive and/or deadly force and the fabrication of official reports to cover up the defendants' misconduct;
>
> (2)  A repeated pattern and practice of the defendant officers using excessive, arbitrary and/or unreasonable force;
>
> (3)  Deliberate indifference to the constitutional rights of the City's minority citizens;
>
> (4)  Four police-involved shootings resulting in fatalities between May 25 and July 4, 2012 and a total of six fatalities from police-involved shootings in the 2012 calendar year; and
>
> (5)  Constitutional defects in the officers' training.

UMF 55.

There is no evidence that other incidents generally referenced in plaintiffs' first amended complaint involved constitutional violations.  Officers Kenney, Boyce and Thompson have no history of misconduct, complaints or discipline reflecting a "repeated pattern and practice of using excessive, arbitrary and unreasonable force," discrimination, racial profiling, unlawful arrest, or dishonesty. UMF 56. The officers are POST certified. Each officer has and continues to receive law enforcement training. Each officer is familiar with and trained according to Vallejo Police Department Policies. UMF 57.  The training policies of the Vallejo Police Department were adequate as of the date of this incident and City officials were not deliberately indifferent to the adequacy of training policies. UMF 58.

---

[1] Barrett Jr. claims that an unidentified officer made a racial slur directed towards Barrett Jr. at the time he was taken into custody that other officers heard and to which they failed to object and/or report. See Preston Decl. Exh. P, Interr. No. 21.

8

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

# IV.    LAW AND ARGUMENT

## A.    Standard For Summary Judgment

A defendant may obtain summary judgment when "there is no genuine issue as to any material fact . . ." Fed.R.Civ.P. 56(c).  In deciding whether a genuine issue of material fact exists, the court's inquiry "must be guided by the substantive evidentiary standards that apply to the case." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).  In turn, those standards are to be applied to "only disputes over facts that might affect the outcome of the suit under the governing law . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party need only point out "through argument the absence of evidence to support Plaintiff's claim."  *Devereaux v. Abby*, 263 F.3d 1070, 1076 (9th Cir. 2001) citing *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).  If, after adequate time for discovery, a party against whom a motion is made fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial, summary adjudication against that party must be entered.  *Id*. at 322.  ["[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."]; see also *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990) ["*Celotex* made clear that Rule 56 does not require the moving party to negate the elements of the nonmoving party's case; . . . the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."].    The court may grant partial summary judgment against those causes of action for which Plaintiff has failed to provide evidence of a genuine issue of material fact.  See, Fed. Rule Civ. Pro. 56(a).

## B.    Plaintiffs Cannot Establish Essential Elements of Their Claim for Violation of Barrett Sr.'s Fourth Amendment Rights.

Under the Fourth Amendment, a law enforcement officer may use force that is objectively

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

reasonable in light of all the circumstances known to the officer. *Graham v. Connor*, 490 U.S. 386, 395-396 (1989). Determining objective reasonableness requires the court to weigh "the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interests at stake" by considering several factors including the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*, 396. The most important factor in this analysis is the threat posed by the suspect. See *Foster v. City of Fresno*, 392 F.Supp.2d 1140, 1148, 1149 (E.D.Cal. 2005) citing *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005). There are no *per se* rules applied in the Fourth Amendment context. Neither is the totality of factors to be considered limited by those enumerated in *Graham;* rather, the court must consider factors appropriate to the particular case presented. See *Mattos v. Agarno*, 661 F.3d 433, 441 (9th Cir. 2011) and *Bryan v. McPhearson,* 630 F.3d 805 (9th Cir. 2010). The question of reasonableness is properly analyzed "from the perspective 'of a reasonable officer on the scene "rather than with the 20/20 vision of hindsight." *Graham* at 396. Allowance is therefore given "for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.' " *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2020 (2014), quoting *Graham* at 396-397.

The use of deadly force is objectively reasonable where the officer "has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner,* 471 U.S. 1, 11 (1985). In determining the issue of reasonableness on summary judgment in circumstances such as those presented here, the court must "carefully examine all the evidence in the record . . . to determine whether the officer's story is internally consistent and consistent with the other known facts." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). A careful examination of the record in this case unquestionably supports the conclusion that Officer Kenney reasonably believed that Barrett Sr. posed an immediate and serious threat to the officer and that the force Officer Kenney used in response to that threat was objectively reasonable in light of all the circumstances known to him.

The crime that Barrett Sr. was committing was very serious. He led multiple, distinctively

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

marked patrol vehicles operated by fully uniformed officers with lights and sirens engaged on a high

speed pursuit.  Barrett Sr. refused to stop and was driving recklessly, with willful and wanton disregard

for public safety.[2]  Barrett Jr.'s testimony confirms Barrett Sr.'s reckless driving that was observed by

Officer Kenney and the other pursuing officers:

> Q:     Were you scared at any point during that route when your dad was driving?
>
> A:     Yes.
>
> Q:     And when were you first scared?
>
> A:     When I saw the lights come on.
>
> Q:     And did your dad accelerate at that point, he went faster?
>
> A:     Yes
>
> Q:     Yes. Did that scare you?
>
> A:     Yes.
>
> Q:     When your dad hit the curb, that probably made you more scared?
>
> A:     Yeah, it frightened me.
>
> Q:     Because you knew he was intoxicated, right?
>
> A:     Yes.

Preston Decl., Exh. A, Barrett Jr. Dep.  118:24-119:8, 17-21; see also 120:2-5.

Barrett Jr. confirmed that Barrett Sr. knew that the police were trying to stop him and that he

was fleeing the police.   *Id.,* 59:12-16, 116:4-17, 117:9-13.   There is no dispute that Barrett Sr. led

officers on the vehicle pursuit into an area known to the pursuing officers to be a dead end.   Barret Jr.

---

[2] Evading arrest becomes a felony when the suspect drives with "willful and wanton" disregard for
public safety.  Barrett's evasive driving during which he committed multiple traffic violations qualifies
as "willful and wanton" conduct.  See Vehicle Code section 2800.2 and *People v. Williams*, 130
Cal.App.4th 1440 (2005); see also *Sykes v. U.S.,* 131 U.S. 2267 (2011).  Barrett Sr. was observed
committing multiple violations including operating a vehicle without lights (Ca. Veh. Code § 24250),
exceeding the posted speed limit (*id.* §§ 22353 and 40000.1), running a stop light (*id.* §21453), running
several stop signs (*id.* § 22450A), and traveling at times on the wrong side of the street (*id.* § 21658).
Officer Kenney also testified that from his training and experience vehicle pursuits are "extremely
violent, and they're dangerous.  They endanger the public.  Every single speeding turn, every red light
that's blown, it's --- [Barrett Sr. is] taking a risk of hurting or killing somebody . . . [with a] one ton
missile, essentially, going down the road, and any innocent bystander that --- obeying the rules of the
road can get seriously injured or killed."  Preston Decl. Exh. D Kenney Dep. 62:14-63:9.

confirms that he and Barrett Sr. continued their attempts to evade the officers by fleeing on foot, both running in a southbound direction.  The officers and percipient witness Neal confirm that verbal orders were given to both Barrett Sr. and Barret Jr. to stop but that both men continued running.  Barrett Jr. abandoned his father by selecting a route up stairs and over a gate that he knew his father could not scale.  Barrett Sr. turned westbound, choosing to run into the dark breezeway.

Factoring in all pertinent circumstances known to Officer Kenney, his belief that Barrett Sr. posed a significant threat of death or serious physical injury and his response to that threat was objectively reasonable.   Officer Kenney exited his patrol vehicle in front of the apartment complex. Based on his training and experience Officer Kenney knew that fleeing suspects are often involved in criminal activity and that they are often armed.  His observations of Barrett Sr. and his experience as a law enforcement officer led him to the conclusion that Barrett Sr. was desperate.  Officer Kenney also heard a noise that he believed represented a threat to other officers isolated in the dead end area where the pursuit terminated.  On the basis of his observations throughout the pursuit and upon arriving at the apartment complex, Officer Kenney drew his weapon and began running through the breezeway towards the rear of the apartment complex.  Officer Kenney did not know and could not have known that Barrett Sr. was running through the dark breezeway towards him.  Once he saw Barrett Sr. Officer Kenney stopped and retreated to his right, giving Barrett Sr. verbal commands to stop.  Barrett Sr. failed to comply.  He continued to advance on Officer Kenney, swiping his hand at Officer Kenney and/or Kenney's gun, took a stutter step and then, quickly reaching into his jacket pocket, began to produce a black, blocky object that appeared to be a weapon.   At the time Barrett Sr. refused to respond to commands to stop and quickly reached into his jacket pocket Officer Kenney had formed the belief that Barrett Sr. was going for a gun and intended to shoot Officer Kenney.  Officer Kenney's post-shooting statements, including his statements to fellow officers Tai and Joseph on scene, are entirely consistent with that belief.   In response to this immediate and serious threat, Officer Kenney discharged his weapon at Barrett Sr.

Plaintiffs can point to no admissible evidence that creates doubt that Barrett Sr. reached into his pocket or that creates doubt as to Officer Kenney's account or the reasonableness of Officer Kenney's

1    belief that Barrett was going for a weapon and posed an immediate deadly threat to Officer Kenney.[3]

2    In fact, the testimony and the physical evidence is entirely consistent with Officer Kenney's account of

3    Barrett's movements and further confirms that Officer Kenney's belief that Barrett Sr. was going for a

4    gun when he quickly reached into his pocket.   Certified Senior Crime Scene Analyst Alexander Jason

5    reviewed all pertinent evidence including the scene, incident investigation materials, photographs,

6    statements, and the coroner's report.   On the basis of his review and analysis of this data, Mr. Jason

7    concludes that a bullet struck Barrett Sr.'s forearm resulting in a perforating wound and that the nature

8    and location of that wound confirms that at the time of the injury Barrett Sr.'s forearm was "in a

9    location consistent with the right hand in or being withdrawn from the pocket." Jason Decl., Exh. A, p.

10   5.   Mr. Jason's analysis confirms further the resemblance of the black blocky object located after the

11   shooting in Barrett Sr.'s right front pocket to many handgun models.  *Id.*, pp. 9-11.  This resemblance is

12   dramatically depicted in a video comparison produced by Mr. Jason.  *Id*.  He further confirms that the

13   location of the casings recovered at the scene is consistent with Officer Kenney's described location and

14   movement while firing.  *Id.*, p. 6.  Mr. Jason's reconstruction also confirms that the physical evidence is

15   entirely consistent with Officer Kenney's description of Barrett Sr.'s movements at the time of the

16   shooting; specifically, that the physical and medical evidence is consistent with Barrett Sr. moving

17   towards Officer Kenney and then rapidly rotating to the left as Officer Kenney fired (*id.,* pp. 6-8) and

18   that Officer Kenney fired until the threat was neutralized.  *Id.*, p. 8.

19           The fact that no weapon was recovered from Barrett Sr. following the shooting is of no

20   consequence to the determination of whether Officer Kenney observed Barrett Sr. quickly reaching into

21   his pocket and reasonably believed that Barrett Sr. posed an immediate and deadly threat.   Whether

22

23   [3] Plaintiffs were asked to identify in response to written discovery all factual bases for their claim of
     excessive force.  See Preston Decl. Exh. P, Special Interrogatories No. 18 and Plaintiffs' responses
24   thereto.  The "facts" identified lack evidentiary support [that Barrett was not a violent fleeing felon; that
     Officer Kenney had no "information" that Barrett Sr. had a weapon; that officers gave "confusing and
25   conflicting orders" to Barrett Sr.; that Barrett Sr. was given "inadequate time" to comply with orders;
     and that Officer Kenney used "improper tactics"], constitute legal conclusions [that Officer Kenney's
26   use of force was "arbitrary"], and are immaterial to the determination of whether Officer Kenney's
     actions were reasonable under the *Graham* standard [that Barrett Sr. was unarmed and made no verbal
27   threats; that Barrett Sr. was shot multiple times; and that Barrett Sr. was not rendered unconscious and
     did not immediately die].
28

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

1    "armed – or reasonably suspected of being armed – a furtive movement, harrowing gesture, or serious

2    verbal threat might create an immediate threat."  *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013)

3    [the Fourth Amendment does not require that "officers delay their fire until a suspect turns his weapon

4    on them."]; see also *Cruz v. City of Anaheim*, 765 F.3d 1076, 1078 (9th Cir. 2014) ["It would be

5    unquestionably reasonable for police to shoot a suspect . . . if he reaches for a gun in his waistband, or

6    even if he reaches there for some other reason."].  Officer Kenney's use of deadly force given all of the

7    circumstances known to him was objectively reasonable and did not violate Barrett Sr.'s Fourth

8    Amendment rights and Officer Kenney is entitled to judgment on the first and fourth causes of action as

9    a matter of law.

10    **C.    Plaintiffs Cannot Establish Essential Elements of Their Claims for Violation of
          Their Fourteenth Amendment Rights To Familial Relationship With Barrett Sr.**

11

12    Plaintiffs' claim for interference with familial relationship is governed by the substantive due

13    process clause of the Fourteenth Amendment.  Plaintiffs, therefore, bear the burden to prove that

14    Officer Kenney's use of force "shocked the conscience."  See *Porter v. Osborn*, 546 F.3d 1131, 1137

15    (9th Cir. 2008) citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) [only official conduct

16    that "shocks the conscience" is cognizable as a due process violation].  The focus of the *Porter* court in

17    addressing this claim is applicable here: "the relevant question on the facts here is whether the shocks

18    the conscience standard is met by showing that [Officer Kenney] acted with *deliberate indifference* or

19    requires a more demanding showing that he acted with a *purpose to harm* [Barrett Sr.] for purposes

20    unrelated to legitimate law enforcement objectives."  *Porter*, at p. 1137.  A "deliberate indifference"

21    standard "is sensibly employed only when actual deliberation is practical", namely where law

22    enforcement officers are afforded the "luxury . . . of having time to make unhurried judgments, upon

23    the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations."

24    *Lewis*, 523 U.S. at pp. 851 and 853.  The evidence is without dispute that all of the involved officers,

25    including Officer Kenney, were faced with rapidly evolving circumstances created by Barrett Sr. that

26    did not afford the luxury of deliberation.  In instances such as this, where "police officers are . . . forced

27    to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving," the

28    much higher "purpose to harm" standard applies.  *Id.*, pp. 852-853.  Plaintiffs must, therefore, present

14

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

1  evidence that demonstrates that Officer Kenney acted with a purpose to harm Barrett Sr. unrelated to

2  any legitimate law enforcement objective.  *Porter*, 546 F.3d at p. 1137.  The only reasonable

3  conclusion that can be drawn from the evidence is that Officer Kenney was acting with a purpose

4  entirely related to legitimate law enforcement objectives.  Plaintiffs cannot present evidence sufficient

5  to support their claim for interference with familial relations and Officer Kenney is entitled to judgment

6  on the third cause of action as a matter of law.

7      **D.**        **Defendant Kenney Is Entitled To Qualified Immunity.**

8          Even assuming Plaintiffs can establish a constitutional violation, Officer Kenney is nevertheless

9  entitled to qualified immunity.  Qualified immunity shields an officer from liability even if his or her

10  action resulted from a "mistake of law, mistake of fact, or a mistake based on mixed questions of law

11  and fact" for the purpose of "strik[ing] a balance between the competing need to hold public officials

12  accountable when they exercise power irresponsibly and the need to shield officials from harassment,

13  distraction, and liability when they perform their duties reasonably." *Mattos v. Agarano*, 661 F.3d 433

14  (9th Cir 2011); see also *Messerschmidt v. Millender*, -- US --, 132 S.Ct. 1235, 1244 (2012). "A

15  Government official's conduct violates clearly established law when, at the time of the challenged

16  conduct, "[t]he contours of [a] right [are] sufficiently clear 'that every reasonable official would have

17  understood that what he is doing violates that right.'" *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

18  The contours of "clearly establish law" are not to be defined by the court "at a high level of generality,"

19  rather the analysis must consider "the crucial question [of] whether the official acted reasonably in the

20  particular circumstances that he or she faced." *Plumhoff*, *supra*, 134 S.Ct. at pp. 2023-2024.  As of the

21  date of this incident the law had been clearly established that a law enforcement officer's use of deadly

22  force is reasonable where the officer "has probable cause to believe that the suspect poses a significant

23  threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. at p.

24  11; see also *Long v. City and County of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007).  Officer Kenney's

25  use of force did not violate any clearly established constitutional right of Barrett Sr.  See section IV.B.,

26  above.  Officer Kenney is entitled to qualified immunity.

27  ///

28  ///

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

1

### E.    Plaintiffs Cannot Maintain A Claim for "Wrongful Death – 42 U.S.C. § 1983."

2

Plaintiffs allege that *they* are entitled to recover money damages for the alleged violation of

3   Barrett Sr.'s civil rights. [4]   FAC,  ECF 6 ¶¶ 38 and 39.  Fourth Amendment rights are personal, in this

4   instance personal to Barrett Sr.   *Alderman v. United States*, 394 U.S. 165, 174 (1969).   Barrett Sr.'s

5   rights cannot be vicariously asserted by Barrett Sr.'s heirs and defendants are entitled to judgment as a

6   matter of law on plaintiffs' second cause of action.

7

### F.    Plaintiffs Have No Evidence That the City Had a Policy or Practice to Violate Civil Rights.

8

9   Section 1983 provides a mechanism for seeking redress for alleged deprivation of federal

10  constitutional or statutory rights by persons acting under the color of state law.  42 U.S.C. §1983.

11  Municipalities are not liable for the actions of their agents which result in violations of constitutional

12  rights unless the conduct is pursuant to an official policy or conduct that reflects "practices of state

13  officials so permanent and well settled as to constitute a "custom or usage" with the force of law."

14  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978).  To prevail on their § 1983

15  claims against the City of Vallejo, Plaintiffs have the burden to show: 1) that the Plaintiffs were

16  deprived of constitutional rights; 2) that the City of Vallejo has a policy; 3) that the policy amounts to

17  deliberate indifference to the Plaintiffs' constitutional rights; and 4) that the policy is the moving force

18  behind the constitutional violation.  *Canton v. Harris*, 489 U.S. 378, 389-391 (1989).

19  Requiring a Plaintiff to identify "policy" when seeking to impose liability on a municipality

20  under §1983 insures that the municipality is held liable only for those deprivations resulting from

21  decisions of its duly constituted legislative body or of those officials whose acts may be fairly said to be

22  those of the municipality.  *Monell*, 436 U.S., at 694.  Where constitutional violations are alleged to arise

23  from a custom that is *de facto* policy, the custom must be so "persistent and wide spread" that it

24  constitutes a "permanent and well settled City policy." *Id.*, at p. 691. Liability claimed on

25  unconstitutional custom may not be predicated on isolated or sporadic incidents; it must be founded on

26

27  _____

[4] Plaintiffs also style this claim as one for "wrongful death."   The claim alleged is not legally cognizable and is redundant of the first and fourth causes of action (civil rights violations) and the sixth cause of action (negligent wrongful death).

28

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy. *Trevino v. Gates*, 99 F.3d. 911, 918 (9th Cir. 1996). Plaintiffs here have articulated five bases they allege supports liability against the City of Vallejo: (1) failure to discipline; (2) officers' repeated pattern and practice of constitutional violations; (3) official policy of deliberate indifference; (4) other incidents; and (5) inadequate training. Plaintiffs cannot produce sufficient evidence to support their *Monell* claim on any basis.

Plaintiffs' allegations of a failure to discipline require them to come forward with evidence of a "custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992). The FAC charges that the failure to discipline officers demonstrates "an entrenched culture, policy or practice" that promotes with deliberate indifference constitutional violations including (1) false arrest, (2) racial profiling, (3) excessive force; and (4) falsification of records to "cover up" misconduct.[5] See FAC, ECF No. 6, ¶ 26. Plaintiffs have not and cannot identify any supporting evidence for this claim. The employment history and testimony of each defendant officer confirms that, to the extent complaints have been presented or critical incidents have occurred, each incident was thoroughly investigated including the Barrett incident. While no discipline resulted from these investigations, the notion that investigated complaints that have not resulted in discipline could, alone, form the basis for *Monell* liability is without legal support. The law does not say that every failure to discipline an officer is evidence of a "whitewash" policy or some other policy of "sham" investigations. If that were the law, municipalities might well never conduct internal investigations. But that is not the law. The law requires "something more than a failure to reprimand to establish a municipal policy or regulation." *Kanae v. Hodson*, 294 F.Supp.2d 1179, 1191 (D. Hawaii 2003). The "something more" could be taken from a pattern of civil judgments against municipal employees (*Bartolome v. City and Cnty of Honolulu* 2008 WL 2736016 *9 (D. Hawaii 2008), or testimony of officers with knowledge of departmental practices (*Doe v. City of San Diego*, F.Supp.3d 1233, 1242 (S.D.Cal.).) or expert testimony suggesting that on the basis of routine exonerations, investigations are sham (*Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991)). Here, Plaintiff does not have "something more" to support a

---

[5] The FAC contains no specific allegations related to false arrest or fabrication.

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

finding of *Monell* liability.

Next, plaintiffs allege as a basis for municipal liability a repeated pattern and practice of constitutional violations by officers plaintiffs claim was ratified by the City.  Municipal liability is only appropriate where a Plaintiff has shown that a constitutional deprivation was directly caused by a municipal policy. *Oviatt v. Pearce,* 954 F.2d 1470, 1477–78 (9th Cir. 1992). Such a policy must result from a deliberate choice made by a policy-making official. *Id.*  While a policy may be inferred from widespread practices or "evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded," (*Gillette v. Delmore*, 979 F.2d at 1349) "[a] single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).  See also *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-824 (1995) (plurality opinion) ["Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."].  Here, plaintiffs can present no evidence of *any* other constitutional violations.  The employment history for each officer reflects no sustained findings related to racial profiling, false arrest, use of force, discrimination, or dishonesty.  The fact that complaints were filed against any of these officers does not indicate that the policy plaintiffs allege does in fact exist, much less that the "policy" contributed to the Plaintiff's injury.  See *Hocking v. City of Roseville* 2008, WL 1808250 *5 (E.D. Cal. 2008).  ["statistics of unsustained complaints of excessive force and other police misconduct, without any evidence that those complaints had merit, does not suffice to establish municipal liability under § 1983."] citing *Bryant v. Whalen*, 759 F.Supp. 410, 423-424 (N.D. Ill. 1991) and *Strauss v. City of Chicago*, 760 F.2d 767, 768-769 (3rd Cir. 1985).

Plaintiffs' also allege an "official policy of deliberate indifference to the constitutional rights of primarily minority citizens" based exclusively by plaintiffs' unsubstantiated claim that the City has "long allowed its citizens, such as decedent and [Barrett Jr.] to be abused by police officers." ECF No. 6 ¶ 28.  Plaintiffs ask the court to assume that in every encounter with citizens, officers' conduct is motivated by race.  This is an insufficient basis upon which Plaintiffs can satisfy their burden to show that the officer "abuse" they allege occurred because of the individual's race and was sufficiently

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

pervasive to evidence a custom, policy or practice attributable to a municipal policy maker. *Cf. McCleskey v. Kemp*, 481 U.S. 279, 292-293 (1987) [study indicating death penalty in Georgia was imposed more often on black Defendants and killers of white victims than on white Defendants and killers of black victims failed to establish that any of decision-makers in Defendant's case acted with discriminatory purpose].   Plaintiffs have no cognizable evidence that any officer-involved event, including the Barrett incident, arose from the discriminatory policy of city decision-makers.

Plaintiffs further claim a *de facto* policy of indifference to its citizens' constitutional rights may be inferred from the number of citizens plaintiffs allege were involved in police shootings in 2012.  See ECF No. 6, ¶ 29.   As in *Hocking*, referenced above, plaintiffs' intended inference is not reasonable. Bare statistics regarding the number of shooting incidents in a specific time frame is insufficient to show the existence of a custom, policy, or practice. See *Hocking*, 2008 WL 1808250 *5; see also *Strauss*, 760 F.2d. at 768, referenced above.   The six-week and year-long periods referenced in plaintiffs' complaint are not sufficiently permanent and widespread to constitute a "permanent and well-settled City policy."  See, *Trevino*, 99 F.3d. at p. 918 ["Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."]. Moreover, there can be no municipal liability without an underlying constitutional violation. See, *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994).   Plaintiffs must produce evidence as to each incident alleged that excessive force had indeed been used.   Without a connection between the statistics and a violation of law, the mere happening of police-involved shootings cannot prove the existence of a policy or custom of deliberate indifference.

Finally, Plaintiffs claim that inadequate training of its officers by the City of Vallejo resulted in the alleged constitutional violations.   Municipal liability can be shown by demonstrating through evidence that an alleged constitutional violation was caused by a failure to train municipal employees adequately.  See, *Canton v. Harris*, 489 U.S. 378, 388-391 (1989).  Such a showing depends on three elements:  (1) the training program must be inadequate "'in relation to the tasks the particular officers must perform'"; (2) the City officials must have been deliberately indifferent "to the rights of persons whom the [local officials] come into contact"; and, (3) the inadequacy of the training "must be shown to

19
**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

have 'actually caused' the constitutional deprivation issue." *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) (internal citations omitted).  "A municipalities' culpability for deprivation of rights is at its most tenuous when the claim turns on a failure to train." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011).  The Ninth Circuit applies a "deliberate indifference" standard for *Monell* claims alleging liability based on a policy of failure to train.  See, 9th Cir. Model Civ. Jury Instruction 9.7. Deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of County Commrs. v. Brown*, 520 U.S. 397, 409-410 (1997).  Here, there is no evidence of a failure to train, much less evidence of deliberate indifference.  Plaintiff has no evidence that the training of officers by the City was inadequate "in relation to the tasks the particular officer must perform" or that the adequacy of the officers' training "actually caused" the constitutional deprivations alleged See, *Merritt*, 875 F.2d at 770.  To the contrary, the evidence demonstrates both the adequacy of the City's training of all its officers generally and of the officers named as defendants in particular.  See Preston Decl. Exh. F, DEF 912-926, 997-1023 (filed under seal); see also Zwickey Decl., Exh. A, pp. 11-17, 18-29, and 43-46.   The conduct of each involved officers was consistent with their training, the applicable policies and law enforcement standards.

The evidence is insufficient to support plaintiffs' *Monell* claims on any basis alleged.  Defendant City of Vallejo is entitled to judgment on plaintiffs' fifth cause of action as a matter of law.

### G.    Plaintiffs Cannot Establish Essential Elements of Their Claim for Wrongful Death.

The reasonableness standard that applies to Plaintiffs' §1983 claim is the same as the reasonableness standard that applies to Plaintiffs' negligence claim.  See *Hernandez v. City of Pomona*, 46 Cal.4th 501, 513-514 (2009).  The evidence is without dispute that Officer Kenney's use of force was reasonable.  See section IV.B., above.  Expanding the negligence inquiry beyond the use of force to Officer Kenney's pre-shooting conduct the conclusion is the same:  Officer Kenney did not breach any duty of care owed to Barrett Sr. in connection with his pre-shooting conduct.  The *Hernandez* decision is instructive as the negligence inquiry concerning the officers' conduct in that case arose from circumstances nearly identical to those presented here.  In both cases, officers encountered a vehicle being illegally operated at night without headlights and evade arrest by leading officers on a pursuit

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

during which several other Vehicle Code violations were observed.  In both cases, the pursuing officers had probable cause to arrest the fleeing suspect and were not obligated to let the suspect go.  See *Hernandez*, citing *Whren v. U.S.*, 517 U.S. 806, 819 (1996) [car stop is reasonable where officers have probable cause to believe driver violated the vehicle code] and *People v. Hardwick*, 204 Cal. 582, 587-588 (1928)  [officer with probable cause is "under no obligation to retire in order to avoid conflict" and "may press forward and make the arrest, using all the force [reasonably] necessary to accomplish that purpose."].  Neither can the Plaintiffs' negligence claim be premised on Officer Kenney's decision to exit the patrol vehicle and move through the breezeway to the dead end to which Barrett Sr. led the officers in their pursuit.  Identical to Hernandez who elected to lead officers into a dark alley, Barrett Sr. "chose where to run" and Officer Kenney merely encountered Barrett Sr. on Barrett Sr.'s chosen path of attempted escape.  *Hernandez*, 46 Cal.4th at pp. 520-521.  On the basis of the evidence, Plaintiffs cannot establish essential elements of their claim for negligence.  Officer Kenney is entitled to judgment as a matter of law on Plaintiffs' sixth cause of action.

### H.    Plaintiffs Cannot Establish Essential Elements of Their Claim for Violation of Ca. Civil Code § 52.1.

Ca. Civil Code §52.1(a) imposes the burden of proof on plaintiffs to demonstrate that "(1) Defendants interfered with Plaintiff's constitutional rights by threatening or committing violent acts; (2) that Plaintiff reasonably believed that if she exercised her constitutional rights, Defendants would commit violence against her; (3) Plaintiff was harmed; and (4) Defendants' conduct was a substantial factor in causing Plaintiff's harm." *Berman v. Sink*, WL 2360899 (E.D. Cal. 2013) quoting *Tolosko–Parker v. County of Sonoma*, 2009 WL 498099, at *5 (N.D. Cal. 2009).  The statutory protection "does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right."  *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 843 (2004).  Plaintiffs' constitutional claim concerning Barrett Sr. is predicated on the officers' use of force against Barrett Sr.  The "violence, threat of violence or coercion" upon which plaintiffs premise their § 52.1 claim is also based on this same alleged use of force. Ca. Civil Code §52.1 requires as an essential component "evidence of a separate act of violence, threat of violence or coercion along with a constitutional violation to constitute a [§ 52.1] claim." *Muhammad v. Garrett*,

WL7004752 (E.D. Cal. 2014) and *Sanchez v. City of Fresno*, 914 F.Supp.2d 1079, 1118 (E.D. Cal. 2012).  The absence of evidence of any alleged constitutional violation apart from use of force requires entry of judgment for Defendant Kenney on plaintiffs' seventh cause of action as a matter of law.

I.      **Plaintiffs Cannot Establish an Essential Element of the Eighth Cause of Action for Violation of Ca. Civil Code § 51.7.**

Plaintiffs allege on "information and belief" that Officers Kenney, Boyce and Thompson's conduct was "motivated by racial prejudice against [Barrett Sr. and Barrett Jr.]" ECF No. 6, ¶ 60.  They allege that "Plaintiffs are and were readily recognizable as African American," and that "one or more of the Defendants used a racial epithet while in the process of using force and/or detaining [Barrett Jr.]." *Id.*  Plaintiffs also claim that other officers failed to intervene or report this racial epithet.  An essential element of any claim pursued by an individual under Ca. Civil Code §51.7 is that the motivating reason behind a Defendant's conduct is the characteristic upon which the claim is premised.[6]  There is no evidence that conduct of any of the officers named as defendants was motivated by race. There is no evidence of any "comments or remarks" to Barrett Sr. other than the officers repeatedly ordered Barrett Sr. to stop and to show his hands.   Officer Kenney's decision to fire his weapon was a reasonable response to the threat posed by Barrett Sr. and was not motivated by Barrett Sr.'s race.  Barrett Sr. may have been "readily recognizable" as African American; however, basing their claim that Officer Kenney was racially motivated in his conduct solely because Barrett Sr. was African American amounts merely to speculation and is insufficient to support a § 51.7 claim.  Speculation that an officer was motivated by race is not a sufficient basis upon which to create a triable issue.  *Knapps v. City of Oakland*, 647 F.Supp.2d 1129, 1167 (N.D. Cal. 2009) [speculation does not establish the officers' motivations by a preponderance of the evidence], citing *Austin B. v. Escondido School District*, 149 Cal.App.4th 860, 880-881 (2007); see also *United States v. Ross*, 92 U.S. 281, 283-824 (1875) ["inferences from inferences; presumptions resting on the basis of another presumption [is an improper basis for] arriving at a conclusion of fact . . .  Whenever circumstantial evidence is relied upon to prove a fact, the

---

[6] Section 51.7 provides in part "All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of . . . or on account of any characteristic listed or defined in subdivision (b)"  Among the characteristics enumerated is race.

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

1   circumstances must be proved, and not themselves presumed."].

2        Assuming the truth of this claim of Barrett Jr.'s allegation that an officer uttered a racial epithet

3   against him, Barrett Jr. bears the burden of proof as to the identity of the officer to whom he intends to

4   attribute this remark.   Barrett Jr. further claims that other officers present had a duty to intervene.[7]  It is

5   without dispute that Officer Kenney had no interaction with Barrett Jr. and was not physically present to

6   have uttered or have heard the alleged slur.   There is no evidence that any other named defendant,

7   including either Officer Thompson or Boyce, heard the alleged remark or had an opportunity to

8   intervene.   Again, assuming the truth of this allegation, any claim that an officers' failure to intervene

9   evidences  racial motivation is pure speculation and is not a sufficient basis from which any inference

10   may be drawn.   *Knapps v. City of Oakland*, 647 F.Supp.2d at 1167.

11        Plaintiffs cannot produce sufficient evidence to support their § 51.7 claim and Defendants

12   Kenney, Boyce and Thompson are entitled to judgment on the eighth cause of action.

13        **J.**    **Plaintiffs Cannot Establish Essential Elements of Their Claim for Intentional**

14             **Infliction of Emotional Distress.**

15        Plaintiffs allege a survival claim on behalf of Barrett Sr. alleging liability as against Officer

16   Kenney for intentional infliction of emotional distress.   California law is clear that there can be no civil

17   liability as the result of a justifiable homicide.   See Ca. Penal Code section 196; see also *Brown v.*

18   *Ransweiler,* 171 Cal.App.4th 516, 533 (2009).   Officer Kenney's use of force was reasonable in

19   response to the "significant threat of death or serious physical injury to [him]" posed by Barrett Sr.   See

20   *Brown*, quoting *Munoz v. City of Union City*, 20 Cal.App.4th 1077, 1103 (2004).   See Section IV.B.,

21   above.   Consequently, Officer Kenney is shielded from liability for the pendant state law survivor

22   claims alleged on behalf the decedent and is entitled to judgment as a matter of law on this claim.

23        **K.**    **Plaintiffs Cannot Establish Essential Elements Of Their Claim Assault and Battery.**

24        Plaintiffs' state common law claims for assault impose on them a burden that the force

25   employed by the officers in creating intentional contact was unreasonable.   *Edson v. City of Anaheim*,

26

27      [7]  While § 1983 liability may be imposed on the basis of a failure to intervene, the duty is limited to
   instances where officers are present and have an opportunity to intervene.   See C*unningham v. Gates*,

28      229 F.3d 1271, 1289 (9th Cir. 2000).   No authority has been located imposing a similar duty in the
   context of § 51.7 claims.

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

63 Cal.App.4th 1269, 1272 (1998).  The reasonableness of an officer's use of force in the context of a state law claim for assault and battery is analyzed under the reasonableness standard of the Fourth Amendment.  *Brown v. Ransweiler*, 171 Cal.App.4th 526-527.  The circumstances faced by Officer Kenney "reasonably created a fear of death or serious bodily harm" to him.  *Id*.  See Section IV.B, above.  Plaintiffs cannot establish essential elements assault and battery and Officer Kenney is entitled to judgment on this claim as a matter of law.

      **L.**      **Plaintiff Barrett Jr. Cannot Establish Essential Elements of His Claim For Negligent Infliction of Emotional Distress.**

Barrett Jr. seeks recovery of damages against Officer Kenney on the premise that he "hear[d] his father being gunned down"; however, the evidence is without dispute that Barrett Jr. could not and did not contemporaneously observe the shooting involving Barrett Sr.   When Barrett Jr. abandoned his father, he jumped a fence and hid in bushes to avoid detection by police.   From his vantage Barrett Jr. could not have contemporaneously observed the encounter between Officer Kenney and his father. Further, Barrett Jr. had no reasonable basis to believe that the shots he heard involved Barrett Sr. in any way – whether those shots were fired by or at Barrett Sr., fired by an officer or by a third party in an unrelated incident.   Contemporaneous observation is an essential element to a negligent infliction of emotional distress claim. *Thing v. La Chusa*, 48 Cal.3d 644, 667-668 (1989) ["the traumatic emotional effect on the plaintiff who contemporaneously observes both the event or conduct that causes serious injury to a close relative and the injury itself" are the elements that "justify and simultaneously limit an award of damages for emotional distress."].  Where "contemporaneous sensory awareness of the causal connection between the [injury-producing] event and the resulting injury" are absent, there can be no recovery on a negligent infliction of emotional distress theory.  *Goldstein v. Superior Court,* 223 Cal.App.3d 1415, 1427 (1990); see also *Bird v. Saenz*, 28 Cal.4th at 910, 917 fn. 3 (2002) ["someone who hears an accident but does not then know it is causing injury to a relative does not have a viable claim"].  Barrett Jr. heard shots; however his own testimony negates any claim that he contemporaneously knew that the gun shots were causing injury to his father.  Officer Kenney is entitled to judgment as a matter of law on this claim.

///

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**

1   **M.      Plaintiffs Cannot Maintain A Cause of Action Against "Doe" Defendants.**

2      Plaintiffs include allegations in their FAC against "Does 1-50, inclusive." ECF No. 6.  Plaintiffs

3   have not requested an order allowing them to amend their complaint to identify these unnamed

4   defendants.   Discovery closed on February 23, 2015.   ECF No. 15.   Where a Plaintiff, after an

5   opportunity for reasonable discovery, fails to identify "unknown" defendants, dismissal is appropriate.

6   See *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); see also *Decoura v. Ford*, WL 2577554

7   (E.D. Cal. 2012), *9.  An order of dismissal of all "Doe" defendants is required.

8   **IV.    CONCLUSION**

9      Based on the foregoing, defendants respectfully request that this court enter judgment in favor of

10   Officer Kenney and the City of Vallejo on all causes of action and in favor of Officers Thompson and

11   Boyce on the eighth cause of action.

12   Dated: March 24, 2015                  JONES & DYER

13

14                        By:   /s/   Kristen K. Preston

15                               MARK A. JONES
                                 KRISTEN K. PRESTON
16                               Attorneys for Defendants CITY OF VALLEJO, a
                                 municipal corporation; SEAN KENNEY;
17                               WAYLON BOYCE, MARK THOMPSON
                                 individually and in their official capacities as Police
18                               Officers for the CITY OF VALLEJO

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION**