JOHN L. BURRIS, Esq., SBN 69888
ADANTE D. POINTER, Esq. SBN 236229
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone:     (510) 839-5200
Facsimile:      (510) 839-3882
Adante.pointer@johnburrislaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF ANTON BARRETT, by and through its representatives ANTON FRANK BARRETT, PASHANEY BARRETT and A.P.B., by and through his guardian ad litem TASHA PERRY; ANTON FRANK BARRETT, individually; PASHANEY BARRETT, individually and A.P.B, a minor, by and through his guardian ad litem TASHA PERRY, | Case No.: 2:13-CV-00846-JAM-CKD |
| | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT OF PLAINTIFFS' CLAIMS** |
| Plaintiffs, | **Date: April 22, 2015** |
| | **Time: 9:30 a.m.** |
| v. | **Ctrm: 6, 14th Floor** |
| CITY OF VALLEJO, a municipal corporation; SEAN KENNEY: WAYLON BOYCE; MARK THOMPSON; and DOES 1-50, inclusive; individually and in their official capacity as Police Officers for the CITY OF VALLEJO | **Honorable John A. Mendez, Judge** |
| Defendants. | |

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ iii

**Memorandum of Points and Authorities** ..........................................................1

Introduction .........................................................................................................1

Statement of Facts ...............................................................................................1

**Argument** .........................................................................................................**5**

A. Legal Standard on Summary Judgment ..........................................................5

B. Finding Defendant Kenney did not Violate Barrett Sr.'s Fourth Amendment Rights Requires Making a Credibility Determination in the Officer's Favor Which is Prohibited on Summary Judgment ...........................................................................................................7

      1. Fourth Amendment Legal Standard ...........................................................8

      2. Assessing the Credibility of Defendant Kenney is the Sole Province of the Finder of Fact ...........................................................................................................................9

      3. Defendant Kenney is not Entitled to Qualified Immunity ...........................13

C. Plaintiffs Properly Allege Fourteenth Amendment Claims .............................15

D. Material Questions of Fact Prevent Summary Judgment of Plaintiffs' *Monell* Claims...........16

E. Based on the Totality of the Circumstances Defendant Kenney Violated His Duty of Care Owed to Barrett Sr. ........................................................................................................................19

F. Plaintiffs' California Civil Code Claims are Properly Asserted.................................21

      1. California Civil Code § 52.1 ......................................................................21

      2. California Civil Code § 51.7 ......................................................................22

G. Plaintiffs Properly Assert a Claim for Intentional Infliction of Emotional Distress.................23

H. Plaintiffs Properly Assert a Claim for Assault and Battery .....................................24

I. Plaintiff Barrett Jr. Properly Alleges a Claim for Negligent Infliction of Emotional Distress ..24

**Conclusion** .........................................................................................................**25**

# TABLE OF AUTHORITIES

**Statutes**

Federal Rule of Civil Procedure 56(a) ...............................................................6, 9

Federal Rule of Civil Procedure 56(e) ...................................................................6

**Cases**

*Acosta v. Hill*, 504 F.3d 1323 (9th Cir. 2007)......................................................8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .........................................6

*Anderson v. Warner*, 451 F.3d 1063 (9th Cir.2006) ...........................................16

*Ashcroft v. al-Kidd*, 563 U.S. ——, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) ................................14

*Austin B. v. Escondido Union School Dist.,* 149 Cal.App.4th 860 (2007) ......................................21, 22

*Billington v. Smith,* 292 F.3d 1177 (9th Cir. 2002)..............................................20

*Bird v. Saenz*, 28 Cal.4th 910 (2002) ..................................................................25

*Bowles v. City of Porterville,* 571 Fed.Appx. 538 (9th Cir. 2014) ......................10

*Brosseau v. Hagen*, 534 U.S. 194 (2004) ............................................................15

*Brown v. Ransweiler,* 171 Cal.App.4th 516 (2009)..........................................19, 23

*Chien Van Bui v. City and Cnty of San Francisco*, 2014 WL 3725843  (ND Cal. 2014) ...................20

*Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir.1999) ........................................17

*Christensen v. Superior Ct.*, 54 Cal.3d 868 (1991)............................................23

*City of Canton v. Harris*, 489 U.S. 378 (1989)...............................................16, 17

*City of Simi Valley v. Superior Ct.*, 111 Cal.App.4th 1077 (2003)......................21

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)...................................18

*Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dept.*, 387 F.Supp.2d 1084 (N.D. Cal. 2005)...................................21

*Corser v. Cnty. of Merced*, 2009 WL 174144, (E.D. Cal. 2009) ........................22

*Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001) .....................................9, 13

*Duenez v. City of Manteca*, 2012 WL 4359229 (E.D. Cal. 2012) ......................22

*Edson v City of Anaheim*, 63 Cal,App.4th 1269 (1998)......................................24

*Enying Li v. Holder*, 738 F.3d 1160 (9th Cir. 2013)................................................................13

*Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528 (9th Cir. 2010) ............................................8

*Estate of Villarreal ex rel. Villarreal v. Cooper*, 929 F.Supp.2d 1063 (2013) ....................19

*Freeman v. Arpaio*, 125 F.3d 723 (9th Cir. 1997) ...................................................................7

*Gilmore v. Superior Court,* 230 Cal.App.3d 416 (1991) ........................................................19

*Glenn v. Washington Cnty.*, 673 F.3d 864 (9th Cir. 2011)..............................................8, 9, 14

*Graham v. Connor*, 490 U.S. 386 (1989) ................................................................................8, 9

*Gregory v. Cnty. of Maui*, 523 F.3d 1103 (9th Cir. 2008) ......................................................7

*Grudt v. City of Los Angeles,* 2 Cal.3d 575 (1970) ................................................................19

*Hayes v. Cnty of San Diego*, 736 F.3d 1223 (9th Cir. 2013) ................................................11

*Hayes v. County of San Diego*, 57 Cal.4th 622 (2013) ..........................................................20

*Hernandez v. City of Pomona*, 46 Cal.4th 501 (2009) ...........................................................20

*Illinois v. Wardlow*, 528 U.S. 119 (2000) ..............................................................................11

*In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) .................................................6

*Keenan v. Allan*, 91 F.3d 1275 (9th Cir. 1996)........................................................................6

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) .....................................................17

*Long v. County of Los Angeles*, 442 F.3d 1178 (9th Cir. 2006) ............................................17

*Long v. City and Cnty of Honolulu*, 511 F.3d 901 (9th Cir.2007) ........................................15

*Long v. Johnson*, 736 F.3d 891 (9th Cir. 2013) .....................................................................12

*Los Angeles Cnty Bar Ass'n v. Eu*, 979 F.2d 697 (9th Cir. 1992) .......................................22

*Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ....................6

*Miller v. Clark Cnty.*, 340 F.3d 959 (9th Cir. 2003) ...............................................................9

*Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365 (9th Cir. 1998) ........................15

*Munoz v. Olin*, 24 Cal.3d 629 (1979)......................................................................................19

*Nelson v. City of Davis*, 709 F.Supp.2d 978 (ED Cal. 2010)................................................24

*Pearson v. Callahan*, 555 U.S. 223 (2009)............................................................................14

*Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008) .................................................................15

*Quiroz v. Seventh Ave. Center,* 140 Cal.App.4th 1256 (2006) .............................................19

*Ra v. Superior Court*, 154 Cal.App.4th 142 (2007)..........................................................24

*Santos v. Gates*, 287 F.3d 846 (9th Cir.2002)................................................................7, 8

*Sanchez v. City of Fresno*, 914 F.Supp.2d 1079 (ED Cal. 2012) ..................................22

*Saucier v. Katz*, 533 U.S. 194 (2001) .......................................................................14, 15

*Scott v. Harris*, 550 U.S. 372 (2007) ................................................................................8

*Scott v. Henrich*, 39 F.3d 912 (9th Cir.1994)..............................................................7, 15

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) ......................................................9

*Tennessee v. Garner*, 471 U.S. 1, 7 (1985)..................................................................8, 15

*Thompson v. Cnty. of Los Angeles*, 142 Cal.App.4th 154 (2006)...................................21

*Tolan v. Cotton*, ⎯ U.S. ⎯, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014)........................15

*Torres v. City of Madera*, 648 F.3d 1119 (9th Cir. 2011)..........................................14, 15

*Thing v. La Chusa*, 48 Cal.3d 644 (1989)........................................................................24

*United States v. Cisneros*, 448 F.2d 298 (9th Cir. 1971) ...............................................13

*Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010) ........................................................15

*Wood v. Moss*, ⎯ U.S. ⎯, 134 S.Ct. 2056, 188 L.Ed.2d 1039 (2014) ........................14

**California Statutes**

California Civil Code section 52.1............................................................................................21

Cal. Civ.Code § 51.7(a) ......................................................................................................22

Civil Procedure Code § 377.60............................................................................................19

**Secondary Sources**

10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2727, at 480, 485 (3d ed.1998).........................................................................10

John A. Bauman, A Rationale of Summary Judgment, 33 Ind. L.J. 467 (1958).................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Although Defendants style the instant motion as a motion for summary judgment, Defendants do not expressly address several of Plaintiffs' claims and more aptly move for summary adjudication of issues of Plaintiffs' claims, brought under the Fourth, Fourteenth Amendments and attendant state law causes of action, for the shooting death of Anton Barrett, Sr., and for the excessive force used on Plaintiff Anton Frank Barrett Jr. by Defendant City of Vallejo Police Officers Sean Kenney, Waylon Boyce and Mark Thompson. Defendants assert that the undisputed evidence confirms that Officer Kenney reasonably believed Decedent Barrett Sr. posed an immediate, serious threat and that the officer's response, of shooting and killing Barrett Sr., was objectively reasonable. Plaintiffs maintain that the critical facts surrounding the moment Defendant Kenney made the decision to shoot Barrett Sr. are disputed or require the court to make credibility determinations, or to draw inferences in Defendants' favor, which is not permissible on summary judgment. Defendant Kenney's on-the-scene comments and response to the subject-incident are distinct from his well-rehearsed version of the incident that he now proffers in critically important respects. It is the jury's function to determine Officer Kenney's credibility—not that of this court. Summary Judgment is simply not appropriate here. Defendants, of course, do not attack Plaintiffs' claims involving their use of force and treatment of Plaintiff Anton Frank Barrett Jr., because fortunately Plaintiff survived the encounter and is available to provide testimony that contradicts that of the Defendant Officers, clearly creating an issue of material fact.

Plaintiff's Opposition to Defendants' Motion for Summary Judgment is based on the arguments made below, on the Declaration of Adanté Pointer (hereinafter the "Pointer Declaration"), filed herewith and all exhibits attached thereto, on the court's file in this matter, and on such oral and/or documentary evidence presented at the hearing of this motion.

## STATEMENT OF FACTS

Plaintiffs acknowledge many facts in this case are undisputed. Decedent Anton Barrett Sr. was driving a white Lexus in the area of Sonoma Blvd. and Tennessee Street in Vallejo, California on May 28, 2012. Barrett Sr. was driving, his son Plaintiff Anton Barrett Jr., and his acquaintance "Gas"

were his passengers. Barrett Sr. was driving "blacked out" in that the vehicle's lights were out, and he alighted from Vallejo Police Officers Jaksch and Tai and a vehicle pursuit ensued.[1] The chase ended on Old Wilson Drive—a cul de sac with a large apartment buildings at the end—when Barrett Sr. hit the sidewalk curb and he and Plaintiff Barrett Jr. fled the car on foot running in different directions.

Defendant Kenney was on routine patrol dressed in full uniform riding passenger as Officer Joseph was driving when they observed Officers Jaksch and Tai pursuing the white Lexus. (See Deposition Testimony of Sean Kenney at 58:1-25, attached to the Pointer Declaration as Exhibit A, hereinafter cited as "Kenney Depo."). Officer Joseph and Defendant Kenney observed Officers Jaksch and Tai pursuing the white Lexus from one or two blocks away and joined in the pursuit. (Kenney Depo 59:1-17.) Defendant Kenney observed that the white Lexus was driving with its lights out, but otherwise did not observe the vehicle damage any property or injure any person in their attempt to get away. (Kenney Depo 60:10-61:4; 67:16-25.) During the pursuit, Defendant Kenney had no information that the people in the white Lexus had committed any underlying crime or why the pursuit had ensued. (Kenney Depo 61:19-62:17.) Defendant Kenney had no information that anyone in the white Lexus was armed, or had threatened anyone. (Kenney Depo 63:21-64:14.)

Officer Joseph and Defendant Kenney followed the white Lexus onto Old Wilson Ave. which dead ends at an apartment complex; Defendant Kenney was familiar with the complex's layout. (Kenney Depo 65:15-21, 66:12-23.) Defendant Kenney got out of the patrol car in order to enter an alleyway between two large apartment buildings where he believed suspects may flee. (Kenney Depo

---

[1] While Plaintiffs do not dispute the fact that a Barrett Sr. led Officers Jaksch and Tai on a vehicle pursuit, Plaintiffs maintain that the "willful and wanton" and "violent" nature of the pursuit is overstated by Defendants. Moreover, whether the character of the vehicle pursuit would lead a reasonable officer to use deadly force is a clear question of fact by the jury. According to the officers, Barrett Sr. ran a red light and several stop signs while making right turns; he exceeded the posted speed limit of 35 by going 42 to 43 mph; he traveled on the wrong side of the road on a dead-end street where he ultimately came to a stop and bailed, and Barrett Sr. accumulated these traffic violations by evading the police for an approximate distance of 6/10 of a mile, all while injuring no one and only causing damage to his own vehicle. (Supplemental Police Report pp. 12, 15.) Plaintiffs maintain that these "undisputed facts" lend themselves to different inferences which are questions of fact for the jury.

66:16-25, 68:1-69:5.) It was a clear night, but the alleyway was dark and completely black and there was not sufficient lighting in the alleyway to see the area clearly. (Kenney Depo 70:15-72:5.)

As soon as Defendant Kenney got out of the patrol car, he heard a loud noise coming from the area of where the vehicle pursuit concluded. (Kenney Depo 81:22-82:17.) Defendant Kenney did not know what made the sound. (Kenney Depo 81:22-82:17.) Upon hearing the loud noise, Defendant Kenney drew his firearm and ran into the dark alley toward where the noise originated. (Kenney Depo 82:18-24, 85:25-86:11, 88:10-14.) Almost immediately after taking off running, Defendant Kenney encountered Barrett Sr. who had rounded the corner of a building and was running up the alleyway in Defendant Kenney's direction. (Kenney Depo 88:14-16; 90:18-91:3.) Defendant Kenney and Barrett Sr. were facing each other and in close proximity; however, even at this distance, Defendant Kenney could not make out Barrett Sr.'s facial features, because it was too dark in the alleyway to do so. (Kenney Depo 91:7-92:3.) Defendant Kenney was startled by the encounter. (Kenney Depo 88:8-16, 94:10-14.) Barrett Sr., who also appeared startled, took a stutter step and reached out with his left hand, which Defendant Kenney took as him reaching for the officer's gun. (Kenney Depo 94:10-95:8, 98:25-99:15.) Barrett Sr. and Defendant Kenney were 5 to 7 feet apart at this time, and despite Barrett Sr.'s reaching motion, Defendant Kenney recognized that they were not close enough for Barrett Sr. to actually make contact with him or his gun. (Kenney Depo 99:16-100:2.) Barrett Sr. did not threaten or say anything to Defendant Kenney at any point during the incident. (Kenney Depo 100:6-8, 101:13-18, 113:10-13.) Defendant Kenney stopped his forward motion, began to back pedal, and Barrett Sr. continued to run straight toward Defendant Kenney. (Kenney Depo 100:14-20.) In back pedaling, Defendant Kenney cleared the extreme darkness of the alleyway and at all times, Barrett Sr. remained in the darker part of the alleyway. (Kenney Depo 104:7-13.) Defendant Kenney testified that he told Barrett Sr. to stop. (Kenney Depo 101:20-25, 106:9-20.)

Defendant Kenney testified that Barrett Sr. reached into the front pouch of his sweatshirt with his right hand and immediately started to pull his hand and an object out. (Kenney Depo 109:18-110:11.) However, immediately following the subject incident, during their incident interviews, Officers Joseph and Tai both said they observed Barrett Sr. running into the alleyway with his hands

already in his waistband area and then almost immediately heard gunshots. (See Supplemental Police Report at pp. 13 and 14, attached to the Pointer Declaration as Exhibit B, hereinafter cited as "Supplemental Police Report".) Defendant Kenney believed that the object was a gun and opened fire on Barrett Sr. (Kenney Depo 107:18-108:2.) Defendant Kenney testified that Barrett Sr. reached for a black blocky object which he never actually cleared out of his pocket by the time he fired his first shot. (Kenney Depo 108:3-18, 110:18-23, 112:1-3.) However, Defendant Kenney also testified variously that he saw the black boxy object as he was firing and that he never saw the object completely out of the pocket. (Kenney Depo 111:15-22, 112:4-17.) Defendant Kenney also testified that he decided to use lethal force on Barrett Sr. to stop his actions when he observed him reach into his sweatshirt pocket; however, Defendant Kenney admits that he already had his gun drawn prior to even seeing Barrett Sr. and was thereby already prepared to use deadly force. (Kenney 110:24-111:15, 112:24-113:9.) Defendant Kenney never warned Barrett Sr. that he would shot him if he did not stop. (Kenney Depo 113:14-17.) Officer Joseph testified that he heard Defendant Kenney yell "let me see your hands" and "he's got a gun" before he heard the gunshots; however, in his police interview, Officer Joseph never indicated that he heard Defendant Kenney say "let me see your hands" and that he heard "he's got a gun" after the gunshots. (Supplemental Police Report p. 14; see Deposition testimony of Dustin Joseph at 49:16-51:10, attached to the Pointer Declaration as Exhibit C, hereinafter cited as "Joseph Depo".) Officer Tai testified consistent with his incident interview that he first heard gunshots and then heard an officer yelling something he could not make out, and once he approached the prostrate Barrett Sr., Defendant Kenney informed yelled, "he has a gun." (Supplemental Police Report p. 13; see Deposition Testimony of Jeff Tai at 48:3-25, 51:2-12, 57:18-22, attached to the Pointer Declaration as Exhibit D, hereinafter cited as "Tai Depo".)

Defendant Kenney testified that he shot Barrett Sr. five times, changed directions constantly and took one or two steps as he shot. (Kenney Depo 106:23-24, 113:18-23, 115:7-9.) Defendant Kenney testified that he and Barrett Sr. were facing each other with the first shot, but that Barrett Sr. kept on the same path, and his body turned to the south during the barrage of shots. (Kenney Depo 114:7-24, 115:4-6.) However, Defendant Kenney also testified that he fired in rapid succession, all of his shots were fired within Barrett Sr.'s first one or two steps, and after four to five shots he fell to the

ground on top of his hands. (Kenney Depo 114:25-115:3, 115:10-20.) Barrett Sr.'s feet were closest to Defendant Kenney when he fell to the ground. (Kenney Depo 117:21-118:9.)

According to the Solano County Coroner, Mr. Barrett Sr. was 5'2" tall and weighed 174 pounds. (Solano County Coroner's report at p. 4, attached to the Pointer Declaration as Exhibit E, hereinafter cited as "Coroner's Report".) Barrett Sr. sustained five gunshot wounds: one to the chest, one to the abdomen, one to the left buttock, one to the back, and one to his right forearm. (Kenney Depo 137:14-138:2; Coroner's Report at pp. 1-2.) There was no evidence of close range discharge of a firearm associated with any of Barrett Sr.'s gunshot wounds. (Coroner's Report p. 2.) All of the gunshots' trajectories indicate they were fired either from Barrett Sr.'s right side or from behind him. (Coroner's Report pp. 1-2, 5-6.)

The officers searched Barrett Sr., twice at Defendant Kenney's insistence, but they did not find a firearm on him or anywhere in the surrounding areas. (Kenney Depo 119:3-22.) All that was recovered from Barrett Sr. was a cell phone and a metal wallet. (*Id.*) Defendant Kenney testified that he was unsure of whether the object he saw Barrett Sr. reach for was the cell phone or the wallet, on the night of the incident he believed it was the cell phone but at the time of deposition he believes it was the wallet. (Kenney Depo 120:2-10.) In either event, the object that Defendant Kenney mistook as a gun was never pointed at him. (Kenney Depo 122:2-5.)

Defendant Kenney did not make any CAD radio transmission (i.e. communicate in any way with his fellow officers) prior to the shooting. (Kenney Depo 37-38.) Barrett Sr. did not stagger, lose his balance, and Defendant Kenney never formed the opinion that Barrett Sr. was intoxicated. (Kenney Depo 45:7-15.)

Defendant Kenney was the shooting officer in two other on-duty fatalities which both occurred only months after the subject incident. (Kenney Depo 7-12, 130:17-25.) Defendant City approved Defendant Kenney's action and did not discipline him for the subject-incident or any of his other shooting death incidents. (Kenney Depo 48:4-49:15; see Critical Incident Report attached Exhibit H to the Pointer Declaration filed herewith under seal pursuant to Documents 13 and 36.) Defendant Kenney was not required to provide a blood or urine sample for the subject incident. (Kenney Depo 56:10-15.) Defendant Kenney was asked to meet with a counselor after each of his

fatality incidents to talk about the impact these incidents may have had on him; however, he was never given a fitness for duty test, and has enjoyed significant career advancement in the wake of these events. (Kenney Depo 125:15-126:13, 127:12-20.)

## ARGUMENT

## A. LEGAL STANDARD ON SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense-or the part of each claim or defense-on which summary judgment is sought." It further provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are those that may affect the outcome of the case. See *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Id*. (citing Fed.R.Civ.P., Rule 56(e)). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

In resolving a motion for summary judgment, the evidence of the opposing party is to be believed. See *Anderson*, 477 U.S. at 255. Moreover, all reasonable inferences that may be drawn from the facts placed before the court must be viewed in a light most favorable to the opposing party. See *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *In re Oracle Corp. Sec. Litig*., 627 F.3d 376, 387 (9th Cir. 2010).  "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the nonmoving party." *Freeman v. Arpaio*, 125 F.3d

723, 735 (9th Cir. 1997).

The Ninth Circuit has explained, "[c]ases in which the victim of alleged excessive force has died 'pose a particularly difficult problem' in assessing whether the police acted reasonably, because 'the witness most likely to contradict [the officers'] story... is unable to testify.'" *Gregory v. Cnty. of Maui*, 523 F.3d 1103, 1107 (9th Cir. 2008) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.1994)). Because of the danger posed by self-serving testimony in such situations, a district court "may not simply accept what may be a self-serving account by the police officer. It must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story." *Henrich*, 39 F.3d at 915. Following from these precepts, courts "have denied summary judgment to defendant police officers in cases where 'a jury might find the officers' testimony that they were restrained in their use of force not credible, and draw the inference from the medical and other circumstantial evidence that the plaintiff's injuries were inflicted on him by the officers' use of excessive force.'" *Gregory*, at 1107 (quoting *Santos v. Gates*, 287 F.3d 846, 852 (9th Cir. 2002)).

Here, Defendants rely on the interpretations of and inferences drawn from the evidence that favor their theory of the case and that impermissibly require unfettered belief in the only living percipient witness's testimony in asserting that they are entitled to summary judgment.

**B. FINDING DEFENDANT KENNEY DID NOT VIOLATE BARRETT SR.'S FOURTH AMENDMENT RIGHTS REQUIRES MAKING A CREDIBILITY DETERMINATION IN THE OFFICER'S FAVOR WHICH IS PROHIBITED ON SUMMARY JUDGMENT**

Defendants assert that "[Defendant] Officer Kenney reasonably believed that [Mr.] Barrett Sr. posed an immediate and serious threat" to him and that the force Defendant Kenney used was reasonable. In so arguing, Defendants ask this court to impermissibly make credibility determinations, and draw inferences, and make factual determinations on issues that are disputed in their favor. Of course, any such determinations are the province of the finder of fact and are not

allowed to be made by this court on summary judgment. Defendants' argument for dismissal Plaintiffs' Fourth Amendment claims must be denied.[2]

### 1. Fourth Amendment Legal Standard

The use of deadly force is a "seizure" subject to Fourth Amendment inquiry. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). The Supreme Court has established that an officer's use of force, including deadly force, violates a Fourth Amendment right if it is excessive under objective standards of reasonableness. *Scott v. Harris*, 550 U.S. 372, 382–83 (2007); *Acosta v. Hill*, 504 F.3d 1323, 1324 (9th Cir. 2007). When determining whether a particular use of force is "reasonable," courts must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the "countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Garner*, 471 U.S. at 8). The Ninth Circuit applies a three step process to determine reasonableness in use of force cases. *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011). First, the court must "assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted.'" *Id.* (quoting *Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 532 (9th Cir. 2010)). Even when an officer may have been justified in using some force, "the amount [of force] actually used may be excessive." *Id.* (quoting *Santos v. Gates*, 287 F.3d at 853).

Second, the court must evaluate the government's interest in the use of force under the totality of the circumstances. *Glenn, supra*, 673 F.3d at 871 (citing *Graham*, 490 U.S. at 396). In *Graham*, the Supreme Court noted that courts should consider such factors as (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. The most important of these factors is whether the suspect posed an immediate threat to

---

[2] Defendants assert that Plaintiffs' second cause of action in which they assert a claim for wrongful death-under 42 USC §1983 for the wrongs suffered by their father Barrett Sr. is improper, not legally cognizable and redundant of other causes of action. Plaintiffs recognize that they cannot vicariously assert Fourth Amendment rights that are personal to Barrett Sr., and as his heirs are asserting his rights on his behalf pursuant to their Fourth Amendment and their own rights for the loss of his companionship pursuant to the Fourteenth Amendment.

the officer's safety or the safety of others. *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc). In addition to the *Graham* factors, the Ninth Circuit has considered the availability of alternative methods of responding to the situation and whether warnings were given prior to the use of force. *Smith*, 394 F.3d at 701; *Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir. 2001).

Finally, the court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion." *Glenn*, 673 F.3d at 871 (quoting *Miller v. Clark Cnty*., 340 F.3d 959, 964 (9th Cir. 2003)). In applying this test, the court must keep in mind the perspective of a reasonable officer on the scene and recognize that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. The Supreme Court has cautioned against use of the "20/20 vision of hindsight" in evaluating the circumstances facing the officer at the time of the shooting. *Id.* at 396. However, the Ninth Circuit has cautioned that "the prohibition against evaluating officers' actions 'with 20/20 vision of hindsight' cuts both ways" and that in evaluating those circumstances facing an officer, they cannot rely on evidence that the officers were not then aware. *Glenn*, 673 F.3d at 873, fn. 8.

### 2. Assessing the Credibility of Defendant Kenney is the Sole Province of the Finder Fact

The key issue in this case is whether a reasonable jury would necessarily find that Defendant Kenney perceived an immediate threat of death or serious physical injury at the time he shot Barrett Sr., which requires analysis of what was happening when the shots were fired. Plaintiffs maintain that because Defendant Kenney is the sole surviving witness of what was happening when the shots were fired, and because assessing what happened at that time requires believing his version of the story, this question is not properly decided on summary judgment. Instead the finder of fact is needed to assess Defendant Kenney's demeanor and make a judgment as to his veracity. Fed.R.Civ.P. 56 advisory committee's note to 1963 amendment ("Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate.").

Defendants argue that Plaintiffs "can point to no admissible evidence that creates doubt that Barrett Sr. reached into his pocket, or creates doubt as to Kenney's account[;]" however, as

Professors Wright, Miller, and Kane observe, "[t]he party opposing summary judgment does not have a duty to present evidence in opposition to a motion under Rule 56 in...circumstances...when there is an issue as to the credibility of the movant's evidentiary material." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2727, at 480, 485 (3d ed.1998).

> Thus if the proof in support of the motion is largely documentary and has a high degree of credibility the opponent must produce convincing proof attacking the documents in order to sustain his burden.... If the moving party's proof is less convincing, *as in cases where he relies on his own testimony or has exclusive knowledge of the transaction*, the burden of providing evidence may never shift to the opponent.

John A. Bauman, A Rationale of Summary Judgment, 33 Ind. L.J. 467, 483–84 (1958) (emphasis added) (quoted in *Wright, Miller & Kane, supra*, at 486); see also, *Bowles v. City of Porterville,* 571 Fed.Appx. 538, 542-43 (9th Cir. 2014) (Korman, D.J., dissenting). As such, Defendants improperly insist that Plaintiffs produce evidence that creates doubt as to Defendant Kenney's version of the subject incident, when he himself has exclusive knowledge of the transaction.

Here, Defendant Kenney claims that Barrett Sr. ran straight at him, swiped at his drawn gun, and reached into his pocket and began to pull out an object resembling a gun (even though he himself knew he was completely unarmed), causing the officer to back pedal and fire several shots. Plaintiffs maintain that all of the shots Barrett Sr. sustained were shot from his right side or his back and Barrett Sr. was found laying face down with his feet closest to Defendant Kenney indicating that he was passing and running away from Defendant Kenney and suggesting that he did not pose a threat at the time he was shot. In order for this Court to grant summary judgment as urged by Defendants, this court has to necessarily find Defendant Kenney to be a credible witness and accept as true that Barrett Sr. made some threatening gesture toward the officer warranting deadly force. Otherwise, the physical evidence suggests that Barrett Sr. was a misdemeanant traffic violator whom Defendant Kenney apprehended by fatally shooting him in the back. Plaintiffs maintain this is simply not a question that can be decided on summary judgment.

### *Underlying Crime/Desperation*

Barrett Sr.'s underlying crime was not severe as it was the traffic violation of speeding (out of the Nation's parking lot) and of driving with his lights off. The decedent then alighted from  Officers

Jaksch and Tai going 42-43 miles per hour in a residential area, and making a couple of right turns against a red light or a stop sign. (See Supplemental Police Report p. 12.) After coming to a stop, Barrett Sr. continued to flee the officers on foot. Even in light of this unseemly behavior, Defendant Kenney did not have any information that Barrett Sr. was armed, or had injured anyone. It is undisputed that the police officers were only coincidentally alerted to Barrett's Sr. presence, as they were not investigating a report of a crime. Defendant Kenney made untoward assumptions about Barrett Sr. based on his decision to flee; however, the United States Supreme Court has recognized there are various reasons why innocent people flee the police. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) (acknowledging that it is "undoubtedly true" "that there are innocent reasons for flight from police….")

Even Defendant Kenney's characterization of "desperation" is strongly called into doubt given that Barrett Sr. was not armed. Defendant Kenney testified that he perceived Barrett Sr. to be desperate as he led the police on car chase and fled on foot, and reached into his pocket upon seeing a policeman in his path. According to Defendant Kenney, there was no other reason for Barrett Sr. to reach into his pocket other than to reach for a weapon. However, Barrett Sr. was not armed. A finder of fact could find it incredible and highly unlikely that someone who knew he was not armed would swat at someone who was obviously armed and had a firearm drawn and fixed on him, or that he would reach into his pocket as though he had weapon when he did not. Cf. *llinois v. Wardlow*, 528 U.S. at 125 (the determination of reasonable suspicion must be based on commonsense judgment and inferences about human behavior). Officer Joseph claimed to hear Defendant Kenney order Barrett Sr. to show his hands before hearing the gunshots fired. Even credit this version of the event (which Plaintiffs maintain in not permissible on summary judgment as none of the other officers heard Defendant Kenney utter these warnings and Defendant Kenney himself does not recall saying them), a finder of fact could determine that Barrett Sr. was complying with the order to show his hands, which resulted in him being shot to death. Cf. *Hayes v. Cnty of San Diego*, 736 F.3d 1223, 1235 (9th Cir. 2013) ("Seen in the light most favorable to Appellant, Hayes was complying with Deputy King's order when he raised the knife and posed no clear threat at the time he was shot without warning.").

*The Dark Alleyway*

According to Defendant Kenney as soon as he stepped out of his patrol car, he heard a loud noise which made him fear danger and caused him to draw his gun and run into a dark alley toward the direction of the noise. It is undisputed that the alleyway was extremely dark. According to Defendant Kenney it was dark enough for a person to be completely concealed who was standing out in the open and so dark that he was unable to make out Barrett Sr.'s facial features even though they stood five to seven feet apart when they first encountered one another. However, even amidst this extreme dark, Defendant Kenney claims to have clearly seen Barrett Sr. reach into his pocket and nearly pull out a black object, specifically an object darker than his skin color. A reasonable finder of fact could disbelieve Defendant Kenney's testimony that he was able to see Barrett Sr.'s motions when he was covered by complete darkness during the entire encounter with Defendant Kenney. See *Long v. Johnson*, 736 F.3d 891, 896 (9th Cir. 2013) (explaining that the court "must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts" (internal quotation marks and brackets omitted)). Moreover, this court cannot simply dismiss internal contradictions in Defendant Kenney's testimony. *Johnson*, 658 F.3d at 960.

*Unlikely story about how Barrett Sr. came to be shot in the back*

Most importantly, Defendant Kenney has no real answer for how Barrett Sr. came to be shot from the right side and from behind. Defendant Kenney testified that Barrett Sr. turned toward the south as he shot him. And that he himself was constantly moving as he shot Barrett Sr. However, Defendant Kenney fired six total shots in rapid succession. Moreover, Defendant Kenney began shooting Barrett Sr. almost immediately upon encountering him in the dark alleyway. A finder of fact could reasonably find that Defendant Kenney began shooting Barrett Sr. immediately upon being startled by him in the alleyway and that the first shot to Barrett Sr.'s chest caused him to pivot (or itself spun him around) and that the remaining shots came as Barrett Sr. was turning and running away from Defendant Kenney. Certainly, a finder of fact could opine there was no reasonable fear of Barrett when his back was turned and he was not facing nor running toward Defendant Kenney. Plaintiffs maintain that if the jury disbelieves Defendant Kenney's testimony regarding how Barrett

Sr. came to be shot from the side and from behind, they can disbelieve some or all of Defendant

Kenney's testimony concerning the events leading up to the shooting as well. See *Enying Li v.*

*Holder*, 738 F.3d 1160, 1164 (9th Cir. 2013) (it is the "general law of the Ninth Circuit" that "a

witness 'deemed unbelievable as to one material fact may be disbelieved in all other respects.'")

(internal citation omitted). Indeed, it is a long-recognized prerogative of the jury to disbelieve the

testimony of a party and conclude that the opposite of his testimony is true. "[A] trier of fact is not

compelled to accept and believe the self serving stories of vitally interested defendants. Their

evidence may not only be disbelieved, but from the totality of the circumstances, including the

manner in which they testify, a contrary conclusion may be properly drawn." *United States v.*

*Cisneros*, 448 F.2d 298, 306 (9th Cir. 1971).

### *Failure to Give a Warning*

Defendant Kenney testified that he told Barrett Sr. to stop running, but that he did not warn

him that he would shoot him. Defendant Kenney testified that there was no time to issue this type of

warning. Generally accepted proper police practices exalt the importance of warning a suspect before

using deadly force: "In situations where any force used is capable of causing serious injury or death,

there is a requirement that, whenever feasible, the deputy must first warn the suspect that force will

be used if there is not compliance." *Deorle*, 272 F.3d at 1281. According to Defendant Kenney's

testimony, Barrett Sr. was at least ten feet away when the officer began shooting him. Plaintiffs

maintain that such a warning would have taken only a split second and it is not clear that a warning in

this situation was unfeasible. "A simple statement by an officer that he fears for his safety or the

safety others is not enough; there must be objective factors to justify such a concern." *Id.*

### *False Corroboration*

Defendants claim that Defendant Kenney's testimony is corroborated by the statements of the

other officers on the scene; however, during Officer Joseph's police interview and during both

Officer Tai's police interview and deposition, Officer Tai indicated that they heard Defendant

Kenney yelling for Barrett Sr. to show his hands or warning that Barrett Sr. had a gun after they heard

the gunshots fired. This does not negate Plaintiff's theory that Defendant Kenney shot Barrett Sr.

because he was startled by him and not because he made any threatening gesture of reaching for a

weapon that he was not even armed with. A reasonable finder of fact could opine that Defendant Kenney contemporaneously realized that he shot Barrett Sr. without just cause and immediately indicated to his peers that the suspect was armed to cover-up his actions and has maintained this ruse throughout this litigation.

Defendants also impertinently rely on Plaintiff Anton Barrett Jr's testimony to corroborate Defendant Kenney's testimony. Plaintiff Barrett Jr. was not in the dark alleyway with his father and Defendant Kenney and cannot be used to corroborate his story. Moreover, Defendant Kenney (nor any of the other involved officers) formed the opinion that Barrett Sr. was intoxicated, so Plaintiff Barrett Jr.'s testimony that they both had been drinking is irrelevant and only meant to poison this Court against the Decedent. Again, 20-20 hindsight "cuts both ways" and cannot be used to support the officers' decisions when they were not aware of these factors at the time of the subject incident. *Glenn*, 673 F.3d at 873, fn. 8.[3]

### 3. Defendant Kenney is not Entitled to Qualified Immunity

The doctrine of qualified immunity protects a government official from liability for civil damages except where the official violates a constitutional right that "'was "clearly established" at the time of the challenged conduct.'" *Wood v. Moss*, —— U.S. ——, 134 S.Ct. 2056, 188 L.Ed.2d 1039 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. ——, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)). The qualified immunity inquiry has two prongs: (1) whether the officer's conduct violated a constitutional right and (2) whether "the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood her conduct to be unlawful in the situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001)). The court has discretion to consider the two factors in either order. See *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). At summary judgment, resolution of the qualified immunity defense turns whether the undisputed facts and the inferences to be drawn therefrom, viewed in the light most favorable to the non-moving party, show a violation of clearly

---

[3] Plaintiffs maintain that there is a threshold credibility question with Defendant Kenney's testimony in that he admits that at the time of this deposition he was "inferring a lot that I learned later, obviously" in his testimony regarding what prompted him to shoot Barrett Sr., suggesting that he impermissibly used 20/20 hindsight to justify the shooting. (Kenney Depo 107:10-11.)

established federal constitutional rights. See *Tolan v. Cotton*, ⸻ U.S. ⸻, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014). In cases alleging unreasonable searches or seizures, courts should define the "clearly established" right at issue on the basis of the "specific context of the case." *Saucier, supra*, at 201. Accordingly, courts must take care not to define a case's "context" in a manner that imports genuinely disputed factual propositions. See *Brosseau v. Hagen*, 534 U.S. 194, 195, 198 (2004) (inquiring as to whether conduct violated clearly established law "'in light of the specific context of the case'" and construing "facts ... in a light most favorable to" the nonmovant).

The second prong of the qualified immunity analysis requires the court to decide whether it would have been clear to a reasonable officer in Defendant Kenney's position that his use of deadly force was unlawful in the situation he faced. The question of whether a defendant is entitled to qualified immunity is a question of law for the court. *Torres*, 548 F.3d at 1210. However, the court only resolves that question of law if all material facts are undisputed and, taken in the light most favorable to the plaintiff, the facts show the defendant did not violate clearly established federal constitutional rights. *Id.* At all times relevant to this action, it was clearly established that the use of deadly force was reasonable only if an officer "'has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Long v. City and Cnty of Honolulu*, 511 F.3d 901, 906 (9th Cir.2007) (quoting *Scott v. Henrich*, 39 F.3d at 194, in turn quoting *Tennessee v. Garner*, 471 U.S. at 3 (1985)). The same credibility question that precludes summary judgment on the merits of Plaintiffs' Fourth Amendment claims precludes a finding that Defendant Kenney is entitled to qualified immunity on these claims.

## C. PLAINTIFFS' PROPERLY ALLEGE FOURTEENTH AMENDMENT CLAIMS

Plaintiffs assert Fourteenth Amendment substantive due process claims because they were deprived of their liberty interest in the companionship and society of Barrett Sr. their father through official conduct. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). "[O]nly official conduct that 'shocks the conscience' is cognizable as a due process violation." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (citation omitted). In determining whether excessive force shocks the conscience, the court must first ask "whether the circumstances are such that actual deliberation [by the officer] is practical." *Id.* at 1137(quoting *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d

365, 372 (9th Cir. 1998) (internal quotation marks omitted)). Where actual deliberation is practical, then an officer's "deliberate indifference" may suffice to shock the conscience. *Id*. On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives. *Id*. at 1140.

Defendant Kenney claims that the incident unfolded so quickly that he had barely had time to react much less deliberate. Plaintiffs maintain that Defendant Kenney's conduct—of shooting Barrett Sr. to death from the side and from behind as he ran away from the officer—shocks the conscience and amounts to a violation of Plaintiffs' Fourteenth Amendment rights. According to the coroner, all shots hit Barrett Sr. from the side or from behind—and not from straight on when Defendant Kenney and Barrett Sr. were face-to-face as advanced by Defendants. None of the shots were fired from close range, which suggests that Barrett Sr. had run past Defendant Kenney and was continuing to run away from Defendant Kenney. Defendant Kenney had no information that Barrett Sr. had harmed anyone and as he was running away from the officer did not pose any danger to the officer. As such, it was unconscionable for Defendant Kenney to use deadly force to apprehend Barrett Sr., an unarmed suspect misdemeanant traffic violator.

## D. MATERIAL QUESTIONS OF FACT PREVENT SUMMARY JUDGMENT OF PLAINTIFFS' MONELL CLAIMS

Pursuant to 42 U.S.C. § 1983, municipalities are liable for injuries that arise from an official policy or custom that causes constitutional deprivations. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).  Plaintiffs must show that they: "(1) possessed a constitutional right of which they were deprived; (2) that the City had a policy; (3) that the policy 'amounts to deliberate indifference' to their constitutional rights; and (4) that the policy is the 'moving force behind the constitutional violation.'"  *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)). The failure to train or supervise may give rise to a "policy or custom" sufficient to impose liability on these Defendants. *City of Canton*, 489 U.S. at 389- 90. Defendants' boilerplate argument against *Monell* is that Plaintiffs cannot produce any evidence that supports Plaintiffs' *Monell* claims against Defendant City. Plaintiffs assert the evidence

proves per se violations of *Monell*, and at the very least reveals material factual disputes that preclude summary judgment in favor of Defendants. Plaintiffs also maintain that this court is implicitly equipped with all of the evidence of a pattern and practice tantamount to Defendant City's policy of deliberate indifference to the constitutional violations of its police officers by the sheer volume of currently pending litigation concerning these same Defendant Officers' use of excessive force, including instances of deadly force.[4]

### Failure to Train

A municipality's failure to train its employees may create Section 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton*, 489 U.S. at 388; *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long v. Cnty of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006). Defendants are obviously fine with their track record. But multiple shooting deaths, including of unarmed non-threatening suspects, within a period of a few month, is abhorrent. That a great deal of these fatalities were committed by a single officer—Defendant Kenney—is horrifying. These instances also indicate failure in training that it is unlawful to use deadly force when the officer is not in fear of their safety or that of others. And shooting a person in the back is a clear indication that they do not pose a threat to the officer, as they are running away.

### Ratification

Contrary to Defendants' argument, isolated constitutional violations may give rise to municipal liability where an agent of the municipal corporation possesses final policymaking

---

[4] See e.g., *Moore et al. v. City of Vallejo et al.*, 2:14-cv-00656-JAM-KJN (alleging unreasonable use of deadly force by Defendant Kenney); *Hicks v. City of Vallejo et al.*, 2:14-cv-00669-KJM-DAD (alleging excessive force against Defendant Kenney wherein he choked a man and woman during a traffic stop); *Johnson et al v. City of Vallejo et al*, 2:13-cv-01072-JAM-KJN (alleged unreasonable deadly force against Defendant Kenney); *IDC v. City of Vallejo et al*, 2:13-cv-01987-DAD (alleging excessive force against Defendants Kenney and Thompson wherein they beat and choked a minor); see Kenney Depo 7-12 (discussing all pending against him litigation that he could recall); Deposition testimony of Mark Thompson at 39:9-42:14, 100:22-24, attached to the Pointer Declaration as Exhibit G, hereinafter cited as "Thompson Depo".

authority and "ratifies" a subordinate's actions. *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir.1999) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). To establish ratification, a plaintiff must prove that the authorized policymaker approved the subordinate's position and the basis for the decision. *Id.* at 1239 (citing *Praprotnik*, 485 U.S. at 127). Whether an agent of a municipality possesses final policymaking authority is a question of state law. *Praprotnik*, 485 U.S. at 124. Whether that agent has ratified the actions of a subordinate is a question of fact. *Iopa*, 176 F.3d at 1238–39.

It is undisputed that Defendant Kenney violated his training by his conduct during the subject incident. Here, Defendant Kenney admittedly failed to listen to his radio, in violation of his training, for an explanation of the loud noise that he heard that made him fear for his safety and that of his fellow officers. Defendant Kenney also failed to communicate via his radio, as he was trained, to inform his fellow officers of his position in the alleyway and perhaps learn that the suspect was running in his direction. (Kenney Depo 83:10-84:22.) Defendant Kenney abandoned his potential position of cover when he heard the ominous loud noise and ran prostrate toward the danger in direct contradistinction to the training. (Kenney Depo 84:23-85:2, 86:12-88:9.)  Defendant Kenney ran into a completely dark alleyway with only his gun drawn and no light source, in violation of his training. (Kenney Depo 81:11-17.) Defendant Kenney failed to warn Barrett Sr. that he was going to use deadly force in violation of his training. (Kenney Depo 28:1-20.) The culmination of these violations resulted in Defendant Kenney being in a dark alleyway, in which he anticipated encountering a fleeing suspect, by himself in the dark with his hands full of firearm leaving himself little to no options or maneuverability. Defendant City ratified all Defendant Kenney's training violations and failed to discipline or retrain him. Indeed, Defendant City has rewarded Defendant Kenney for his folly by promoting him to, ironically, be a detective in the homicide division and by choosing him to be a member of the elite SWAT division.

Moreover, questions of material fact preclude summary judgment on whether Defendant City ratified conduct that amounted to a constitutional violation. Plaintiffs maintain that Defendant Kenney also violated his training and Vallejo PD policy in using deadly force on Barrett Sr. whose underlying crimes were traffic violations and obstruction of peace officers, at best, and who did not

pose a danger to anyone at the time of the shooting, as evident by the fact that he was shot from the side and in the back as he was obviously running away from Defendant Kenney. Similarly, Defendant Thompson's release of Yago on Plaintiff Barrett Jr. when he had come out of hiding with his arms raised and saying that he surrendered and Defendants Boyce and Thompson beating Barrett Jr. after he surrendered and holding him, while hurling racial slurs, down as K9 Yago continued to bite him are clear constitutional violations. Of course, these allegations of violations of training and policy are disputed and are not properly decided on summary judgment. See e.g., *Estate of Villarreal ex rel. Villarreal v. Cooper*, 929 F.Supp.2d 1063, 1077 (2013) (denying summary judgment because issues of material fact remain opining "if a jury were to find that [the defendant officer]'s actions violated [the suspect]'s Fourth Amendment rights, the jury could conceivably accept [the of Chief of Police]'s statements [of affirmation of the defendant officer's conduct] as a ratification of any unconstitutional actions taken by [the defendant officer]."]

**E. BASED ON THE TOTALITY OF THE CIRCUMSTANCES DEFENDANT KENNEY VIOLATED HIS DUTY OF CARE OWED TO BARRETT SR.**

Plaintiffs assert that they are entitled to recover damages resulting from the tortuous acts of Defendant Kenney which resulted in Barrett Sr.'s death, specifically wrongful death negligence. Plaintiffs assert direct liability against the Defendant Officer and against Defendant City under a theory of respondeat superior for wrongful death. See Cal.Civ.Proc. Code § 377.60 (providing the statutorily-created right of an heir to recover damages resulting from a tortious act which results in the decedent's death; *Gilmore v. Superior Court,* 230 Cal.App.3d 416, 420 (1991).

"The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." *Quiroz v. Seventh Ave. Center,* 140 Cal.App.4th 1256, 1264 (2006). The California Supreme Court has held that "an officer's lack of due care can give rise to negligence liability for the intentional shooting death of a suspect." *Munoz v. Olin,* 24 Cal.3d 629, 634 (1979) (citing *Grudt v. City of Los Angeles,* 2 Cal.3d 575, 587 (1970)). In this context, to prove the tort, a plaintiff must show that the officer violated his "duty to use reasonable force under the totality of the circumstances." *See Brown v. Ransweiler,* 171 Cal.App.4th 516, 526, fn.10 (2009). Importantly, the California Supreme

Court recently reaffirmed long-standing precedent that where an officer's preshooting conduct did not cause the plaintiff any injury independent of the injury resulting from the shooting, negligence "liability can arise if the tactical conduct and decisions leading up to the use of deadly force *show*, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Hayes v. Cnty of San Diego* (*Hayes*), 57 Cal.4th 622, 632 (2013) (emphasis original).

The *Hayes* Court expressly distinguished California's wrongful death – negligence standard from that of the rule that applies to violations of the federal Constitution's Fourth Amendment which focuses "more narrowly than state tort law on the moment when deadly force is used, placing less emphasis on preshooting conduct." *Hayes, supra*, 57 Cal.4th at 638 (internal citations omitted). "The Fourth Amendment's 'reasonableness' standard is not the same as the standard of 'reasonable care' under tort law, and negligent acts do not incur constitutional liability." *Id*. citing, *Billington v. Smith,* 292 F.3d 1177, 1190 (9th Cir. 2002).

Citing *Hernandez v. City of Pomona*, 46 Cal.4th 501, 514 (2009) (which rejected the plaintiffs' "preshooting negligence claim" because the officers had probable cause to arrest the decedent and, under Section 835a, could use reasonable force to arrest him and did not have an obligation to stop trying to do so), Defendants assert that Plaintiffs cannot establish essential elements of their wrongful death negligence claim. *Hernandez* is distinguished because in that case, the court's decision was made "in light of the [federal court's previous] finding that the shooting [itself under the Fourth Amendment] was reasonable," so the court focused only on the officers' pre-shooting pursuit of the decedent. See *id*. at 518–21. Here, on the other hand, Plaintiffs' wrongful death claim is not limited only to Defendant Kenney's preshooting conduct; instead, it is based on the totality of the circumstances surrounding Barrett Sr.'s death. It has not been decided whether Defendant Kenney's shooting was reasonable; indeed, Plaintiffs' have shown that material questions of fact preclude a determination on the reasonableness of the shooting above. Defendant Kenney's preshooting conduct should not be considered separately from his shooting of Barrett Sr. See *Hayes, supra*, 57 Cal.4th at 632; *Chien Van Bui v. City and Cnty of San Francisco*, 2014 WL 3725843, at *16 (ND Cal. 2014).

Moreover, Plaintiffs have established that Defendant Kenney violated his training by running into a dark alleyway, with his gun drawn instead of a flashlight, and instead of seeking cover and

assessing the situation as he was trained to do (e.g., listening to his radio to determine if the loud noise he heard was a gunshot) rather than putting himself in the dark and in danger. Contrary to Defendants' argument, following a fleeing suspect into a dark parking lot is distinguished from merely encountering a suspect in a dark alleyway where it was improper for the officer to be in the first instance. Given the totality of the circumstances, Defendant Kenney violated his duty of care owed to Barrett Sr.

**F. PLAINTIFFS' CALIFORNIA CIVIL CODE CLAIMS ARE PROPERLY ASSERTED**

*1. California Civil Code § 52.1*[5]

California Civil Code section 52.1 provides any individual whose enjoyment of rights secured by the Constitution have been interfered with "by threats, intimidation, or coercion, or attempt to interfere by threats, intimidation, or coercion," may institute and prosecute on his own behalf a civil action for damages. To establish a claim under California Civil Code section 52.1, a plaintiff needs to establish that the defendants "interfered with the plaintiff['s] constitutional rights by the requisite threats, intimidation, or coercion." *Austin B. v. Escondido Union School Dist.,* 149 Cal.App.4th 860, 882 (2007).  The word "interferes" under this statute means "violates." *Id*. at p. 883.  "The essence of [this] claim is that the defendant, by the specified improper means (i.e., "threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something that he or she had the right to do under the law or force the plaintiff to do something that he or she was not required to do under the law." *Id*.  Use of law enforcement authority to effectuate a seizure and a search can constitute interference by "threats, interference, or coercion" if the police officer lacked a justification to seize and search a person.  *Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dept*., 387 F.Supp.2d 1084, 1102-1103 (N.D. Cal. 2005). California courts have held that Section 52.1 claims are viable when plaintiff has a claim for excessive force by a law enforcement officer. See, e.g., *Thompson v. Cnty. of Los Angeles*, 142 Cal.App.4th 154, 172-73 (2006); *City of Simi Valley v. Superior Ct.*, 111 Cal.App.4th 1077, 1082-84 (2003).

---

[5] Defendants only attack Plaintiffs' claim for §52.1 against Defendant Kenney for his actions against Barrett Sr. and do not attack Plaintiff Barrett Jr.'s § 52.1 claim against Defendants Boyce and Thompson. As such, Plaintiffs do not address the merits Plaintiff Barrett Jr.'s § 52.1 claim.

Defendants citation to *Sanchez v. City of Fresno*, 914 F.Supp.2d 1079 (ED Cal. 2012), is inapposite and otherwise does not support Defendants' position. In Sanchez, on a motion to dismiss, the court found that the Plaintiff's claim that the city embarked on cleanups of homeless shelters in a manner that was inherently intimidating sufficiently pled and only failed to connect the individually named defendants to the intimidating conduct. *Id*. at 1118. Importantly, the *Sanchez* Court also found the complaint which alleged that police officers threatened individuals who sought to retrieve their property with arrest sufficiently stated the requisite intimidating conduct to sustain the allegations. Id.

The elements of a Section 52.1 excessive force claim are essentially identical to those of a § 1983 excessive force claim. See e.g., *Corser v. Cnty. of Merced*, No. 1:05-cv-00985, 2009 WL 174144, at *25 (E.D. Cal. Jan 26, 2009); *Duenez v. City of Manteca*, No. 2:11-cv-01820, 2012 WL 4359229, at *15 (E.D. Cal., Feb. 23, 2012). Where a plaintiff's claims under the federal and state constitutions are co-extensive, the discussion of a plaintiff's federal constitutional claim resolves both the federal and state constitutional claims. *Duenez,* at *15 (citing Los Angeles Cnty Bar Ass'n v. Eu*, 979 F.2d 697, 705 (9th Cir. 1992)). Plaintiffs have established that Defendant Kenney unlawfully shot Barrett Sr. who was unarmed as he was running away and posed no threat of harm to the officer or anyone, thus it was objectively unreasonable to use deadly force against him. Defendants' argument on this point must fail.

### 2. California Civil Code § 51.7

Defendants claim that Plaintiffs fail to establish their claims for §51.7. Defendants' argument strains credulity.

Section 51.7 provides that all persons within California have the right to be free from any violence, or intimidation by threat of violence, committed against the person on account of race. Cal. Civ.Code § 51.7(a). The elements of a claim brought under section 51.7 are: (1) the defendant threatened or committed violent acts against the plaintiff; (2) the defendant was motivated by his perception of plaintiff's race; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm. *Austin B. v. Escondido Union Sch. Dist*., 149 Cal.App.4th 860, 880–81 (2007). While the only witness who could provide evidence as to what racial epithets Defendant Kenney uttered to Barrett Sr. is unavailable, Plaintiff Barrett Jr. expressly

testified that Defendant Thompson hurled a barrage of racial epithets at him blaming him for the injuries he suffered at the muzzle of his own dog—K9 Yago—and threatened to kill him. (Barrett Jr. Depo 136:23-137:23, 138:24-139:25.) Defendant Boyce held Plaintiff Barrett Jr. down, with his knee to his head as he allowed the K9 to repeatedly bite Plaintiff who was not resisting and had surrendered himself to the officers, all which hurling racial epithets at him. (See Deposition Testimony of Plaintiff Anton Frank Barrett, Jr. at 138:3-23, attached to the Pointer declaration as Exhibit F, hereinafter cited as "Barrett Jr. Depo".) Defendants' argument that Plaintiffs have not identified which officers' actions were motivated by Plaintiff Barrett Jr.'s race is unfounded and must fail.

## G. PLAINTIFFS' PROPERLY ASSERT A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendants argue that Plaintiffs' cannot establish essential elements of their claim for intentional infliction of emotional distress. Defendants impermissibly base their argument on their version of the facts that Defendant Kenney's use of deadly force was reasonable. As argued above, Defendant Kenney opened fire Barrett Sr. as he was running past and away from him, while he was unarmed and posing no threat to anyone's safety. As such, Defendant Kenney's actions were patently unreasonable and he is not shielded from liability. Defendants' citation to *Brown v. Ransweiler* is inapposite; there the suspect—a parolee wanted for murder—drove a vehicle on a walkway not intended for vehicles toward officers in an attempt to run them over. *Id.*, 171 Cal.App.4th at 533.

To establish the intent required for a prima face claim for intentional infliction of emotional distress, the plaintiff need only show: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress." *Christensen v. Superior Ct.*, 54 Cal.3d 868, 903 (1991) (internal quotations omitted). To prove that defendant's conduct is "outrageous[, it] must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id*. Viewing the facts in the light favorable to Plaintiffs, Defendant Kenney's conduct of shooting Barrett Sr., a misdemeanant traffic violator who was unarmed and running away from the officer, in the side and back five times is sufficiently outrageous to sustain this claim.

Defendant's argument on this point must fail.

**H. PLAINTIFFS' PROPERLY ASSERT CLAIMS FOR ASSAULT AND BATTERY**

Here again, Defendants assert that based on their version of the facts, Defendant Kenney's actions were reasonable and thus do not amount to a violation of assault. Plaintiffs have established that material questions of fact preclude summary judgment on the issue of reasonableness in the constitutional context and so too preclude summary judgment on Plaintiffs' tort claims. See *Nelson v. City of Davis*, 709 F.Supp.2d 978, 992 (ED Cal. 2010) (citing *Edson v City of Anaheim*, 63 Cal,App.4th 1269, 1272 (1998)).

**I. PLAINTIFF BARRETT JR. PROPERLY ALLEGES A CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

Defendants assert that Plaintiff Barrett Jr. cannot establish essential elements of his claim for negligent infliction of emotional distress because "his own testimony negates any claim that he contemporaneously knew" his father was being shot. Plaintiffs maintain that Plaintiff Barrett Jr. expressly indicates that he knew Barrett Sr. was being gunned down as it occurred.

The elements of a cause of action for the negligent infliction of emotional distress based on the bystander theory are: (1) is closely related to the injury victim; (2) is present at the scene of the injury producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress-a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances. *Thing v. La Chusa*, 48 Cal.3d 644, 667-668 (1989); see also *Ra v. Superior Court*, 154 Cal.App.4th 142, 148-49 (2007) (bystanders must be closely related to the victim, have been present at the scene and contemporaneously aware of the injuring, and have suffered serious emotional distress). However, "*Thing's* requirement that the plaintiff be contemporaneously aware of the injury-producing event has not been interpreted as requiring visual perception of an impact on the victim.  A plaintiff may recover based on an event perceived by other senses so long as the event is contemporaneously understood as causing injury to a close relative." *Bird v. Saenz*, 28 Cal.4th 910,

916 (2002). Here, Plaintiff Barrett Jr. was in the car with his father and aware that they were being chased by the police first by vehicle, and by foot pursuit. (Barrett Jr. Depo 116:4-19, 122:22-123:15, 125:16-20.) In addition, Barrett Jr. knew that his father was not armed, such that when he heard gunshots he knew they could only be coming from the police against the other fleeing suspect—his father. (Barrett Jr. Depo 128:14-129:25.) Plaintiffs maintain Barrett Jr. properly asserts a claim for NEID as he was on the scene and then aware that the Defendant officers shot his father.

## CONCLUSION

Defendant Kenney is the sole surviving witness of what happened in the moments leading up to him fatally shooting Decedent Barrett Sr., as he has exclusive knowledge of the transaction and accepting his version of the subject-incident requires making a credibility determination of his truthfulness. The physical evidence supports both Defendant Kenney's representations and Plaintiffs' theory of the case, thereby making the whole litigation turn on Defendant Kenney's credibility, as such, summary judgment is not properly granted here. This Court should deny Defendant's Motion for Summary Judgment in its entirety.


Dated:  April 8, 2015                    **The Law Offices of John L. Burris**


                                         _____/s/_____
                                         Adanté Pointer
                                         Attorney for Plaintiffs