JOHN L. BURRIS, Esq., SBN 69888
ADANTE D. POINTER, Esq. SBN 236229
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone:    (510) 839-5200
Facsimile:     (510) 839-3882
Adante.pointer@johnburrislaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF ANTON BARRETT, by and through its representatives ANTON FRANK BARRETT, PASHANEY BARRETT AND A.P.B., a minor, by and through his guardian ad litem TASHA PERRY; ANTON FRANK BARRETT, individually, PASHANEY BARRETT, individually and A.P.B., a minor, by and through his guardian ad litem, TASHA PERRY,<br><br>    Plaintiffs,<br><br>vs.<br><br>CITY OF VALLEJO, a municipal corporation; SEAN KENNEY; WAYLON BOYCE, MARK THOMPSON; AND DOES 1-50, inclusive; individually and in their official capacities as Police Officers for the CITY OF VALLEJO,<br><br>    Defendants. | Case No.: 2:13-CV-00846-JAM-CKD<br><br>**PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION OF PLAINTIFFS' CLAIMS**<br>**[L.R. 260]**<br><br>**Date: April 22, 2015**<br>**Time: 9:30 a.m.**<br>**Courtroom 6, 14th Floor**<br><br>**Hon. John A. Mendez**<br><br>**Trial Date: July 20, 2015**<br>**Pre-Trial Conference: June 5, 2015** |

COME NOW Plaintiffs and, pursuant to Local Rule 260, for purposes of this motion, hereby submit the following separate statement of undisputed material facts, together with references to supporting evidence, in support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment or Partial Summary Judgment of Issues, as follows:

1
SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANTS' RESPONSE |
|---|---|
| 1. Defendant Kenney observed that the white Lexus was driving with its lights out, but otherwise did not observe the vehicle damage any property or injure any person in their attempt to get away.<br><br>Pointer Decl, Exhibit A. Kenney Depo 60:10-61:4; 67:16-25.) | |
| 2. During the pursuit, Defendant Kenney had no information that the people in the white Lexus had committed any underlying crime or why the pursuit had ensued.<br><br>Pointer Decl, Exhibit A. Kenney Depo 61:19-62:17. | |
| 3. Defendant Kenney had no information that anyone in the white Lexus was armed, or had threatened anyone.<br><br>Pointer Decl. Exhibit A. Kenney Depo 63:21-64:14. | |
| 4. Defendant Kenney was familiar with the apartment complex's layout. Defendant Kenney got out of the patrol car in order to enter an alleyway between two large apartment buildings where he believed suspects may flee.<br><br>Pointer Decl. Exhibit A. Kenney Depo 65:15-21, 66:12-2366:16-25, 68:1-69:5. | |
| 5. The alleyway between the apartment buildings was dark and completely black and there was not sufficient lighting in the alleyway to see the area clearly.<br><br>Pointer Decl. Exhibit A. Kenney Depo 70:15-72:5. | |

| | |
|---|---|
| 6. Defendant Kenney and Barrett Sr. were facing each other and in close proximity in the alleyaway; however, even at this distance, Defendant Kenney could not make out Barrett Sr.'s facial features, because it was too dark in the alleyway to do so.<br><br>Pointer Decl. Exhibit A. Kenney Depo 91:7-92:3. | |
| 7. Defendant Kenney was startled by the encounter.<br><br>Pointer Decl. Exhibit A. Kenney Depo 88:8-16, 94:10-14. | |
| 8. Barrett Sr. and Defendant Kenney were 5 to 7 feet apart at this time, and despite Barrett Sr.'s reaching motion, Defendant Kenney recognized that they were not close enough for Barrett Sr. to actually make contact with him or his gun.<br><br>Pointer Decl. Exhibit A. Kenney Depo 99:16-100:2. | |
| 9. Barrett Sr. did not threaten or say anything to Defendant Kenney at any point during the incident.<br><br>Pointer Decl. Exhibit A. Kenney Depo 100:6-8, 101:13-18, 113:10-13. | |
| 10. In back pedaling, Defendant Kenney cleared the extreme darkness of the alleyway and at all times, Barrett Sr. remained in the darker part of the alleyway.<br><br>Pointer Decl. Exhibit A. Kenney Depo 104:7-13. | |
| 11. Defendant Kenney testified that Barrett Sr. reached for a black blocky object which he never actually cleared out of his pocket by the time he fired his first shot.<br><br>Pointer Decl. Exhibit A, Kenney Depo 108:3-18, 110:18-23, 112:1-3. | |

3
SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | |
|---|---|
| 12. Defendant Kenney never warned Barrett Sr. that he would shot him if he did not stop.<br><br>Pointer Decl. Exhibit A. Kenney Depo 113:14-17. | |
| 13. According to the Solano County Coroner, Mr. Barrett Sr. was 5'2" tall and weighed 174 pounds.<br><br>Pointer Decl. Exhibit E, Coroner's Report p. 4. | |
| 14. There was no evidence of close range discharge of a firearm associated with any of Barrett Sr.'s gunshot wounds.<br><br>Pointer Decl. Exhibit E. Coroner's Report p. 2. | |
| 15. All of the gunshots' trajectories indicate they were fired either from Barrett Sr.'s right side or from behind him.<br><br>Pointer Decl. Exhibit E. Coroner's Report pp. 1-2, 5-6. | |
| 16. The officers searched Barrett Sr., twice at Defendant Kenney's insistence, but they did find a firearm on him or anywhere in the surrounding areas.<br><br>Pointer Decl. Exhibit A. Kenney Depo 119:3-22. | |
| 17. Defendant Kenney testified that he was unsure of whether the object he saw Barrett Sr. reach for was the cell phone or the wallet, on the night of the incident he believed it was the cell phone but at the time of deposition he believes it was the wallet.<br><br>Pointer Decl. Exhibit A, Kenney Depo 120:2-10. | |
| 18. The object that Defendant Kenney mistook as a gun was never pointed | |

4

SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | |
|---|---|
| at him.<br><br>Pointer Decl. Exhibit A. Kenney Depo 122:2-5. | |
| 19. Defendant Kenney did not make any CAD radio transmission (i.e. communicate in any way with his fellow officers) prior to the shooting.<br><br>Pointer Decl. Exhibit A. Kenney Depo 37-38. | |
| 20. Barrett Sr. did not stagger, lose his balance, and Defendant Kenney never formed the opinion that Barrett Sr. was intoxicated.<br><br>Pointer Decl, Exhibit A, Kenney Depo 45:7-15. | |
| 21. Defendant Kenney was the shooting officer in two other on-duty fatalities which both occurred only months after the subject incident.<br><br>Pointer Decl. Exhibit A. Kenney Depo 7-12, 130:17-25. | |
| 22. Defendant City approved Defendant Kenney's action and did not discipline him for the subject-incident or any of his other shooting death incidents.<br><br>Pointer Decl, Exhibit A. Kenney Depo 48:4-49:15; see Report of Investigation filed under seal pursuant to Protective Order. | |
| 23. Defendant Kenney was not required to provide a blood or urine sample for the subject incident.<br><br>Pointer Decl. Exhibit A, Kenney Depo 56:10-15. | |
| 24. Defendant Kenney was asked to meet with a counselor after each of his fatality incidents to talk about the impact these incidents may have had on him; however, he was never given a fitness for duty test, and has enjoyed significant career advancement in the wake of these events. | |

| | | |
|---|---|---|
| | Pointer Decl, Exhibit A, Kenney Depo 125:15-126:13, 127:12-20. | |
| 25. | Defendant Kenney testified that at the time of this deposition he was "inferring a lot that I learned later, obviously" in his testimony regarding what prompted him to shoot Barrett Sr.<br><br>Pointer Decl, Exhibit A. Kenney Depo 107:10-11. | |
| 26. | Defendant Kenney admittedly failed to listen to his radio, in violation of his training, for an explanation of the loud noise that he heard that made him fear for his safety and that of his fellow officers. Defendant Kenney also failed to communicate via his radio, as he was trained, to inform his fellow officers of his position in the alleyway and perhaps learn that the suspect was running in his direction.<br><br>Pointer Decl. Exhibit A. Kenney Depo 83:10-84:22. | |
| 27. | Defendant Kenney abandoned his potential position of cover when he heard the ominous loud noise and ran prostrate toward the danger in direct contradistinction to the training.<br><br>Pointer Decl. Exhibit A, Kenney Depo 84:23-85:2, 86:12-88:9. | |
| 28. | Defendant Kenney ran into a completely dark alleyway with only his gun drawn and no light source, in violation of his training.<br><br>Pointer Decl. Exhibit A. Kenney Depo 81:11-17. | |
| 29. | Plaintiff Barrett Jr. was in the car with his father and aware that they were being chased by the police first by vehicle, and by foot pursuit.<br><br>Pointer Decl. Exhibit F. Barrett Jr. Depo 116:4-19, 122:22-123:15, 125:16-20. | |

6
SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS

| | |
|---|---|
| 30. In addition, Barrett Jr. knew that his father was not armed, such that when he heard gunshots he knew they could only be coming from the police against the other fleeing suspect—his father.<br><br>Pointer Decl. Exhibit F. Barrett Jr. Depo 128:14-129:25. | |

Dated: April 8, 2015                **The Law Offices of John L. Burris**


                                    By:  /s/ Adanté Pointer
                                         Adanté Pointer
                                         Attorney for Plaintiffs